Norman O'BRIEN, Appellee,

v.

SMITH BROTHERS ENGINE RE-
BUILDERS, INC., Appellants.

Court of Appeals of Tennessee,
Western Section.

Feb. 13, 1973.

Certiorari Denied by Supreme Court
May 21, 1973.

J. W. Kirkpatrick, Memphis, and Hermann J. Galley, Schoharie, N. Y., for appellants.

Robert Y. Jarvis, Memphis, for appellee.

NEARN, Judge.

This is a "slip and fall" case.

The jury returned a verdict in the plaintiff's favor in the amount of $12,000.00. The defendant has appealed.

Seven Assignments of Error have been filed in this Court. Five of these Assignments raise but a single issue and that is whether or not the Trial Judge should have granted the defendant's motion for a directed verdict made at the conclusion of the plaintiff's proof. The two remaining Assignments of Error are addressed to the Court's charge to the jury.

The substance of the argument made by counsel for appellant on the first issue is the motion for a directed verdict should have been granted because the proof establishes as a matter of law: (a) plaintiff was a licensee which fact, under the pleadings, would preclude recovery, (b) the plaintiff was guilty of contributory negligence, (c) the plaintiff assumed the risk and (d) there is no evidence to support the verdict.

■ Our determination of the first issue is governed by the rule that in the review of the action of a Trial Court on a motion for a directed verdict, we must consider all the evidence, take the plaintiff's evidence as true, discard all countervailing evidence, take the strongest legitimate view of the plaintiff's evidence and draw all reasonable inferences therefrom in plaintiff's favor. If, after having done so, there is any material determinative evidence, or any doubt as to conclusions to be drawn from the whole evidence, the matter should have been submitted to the jury and the motion denied. Newark Insurance Company v. Seyfert (1964 M.S.) 54 Tenn.App. 459, 392 S.W.2d 336. An adherence to the rule is rendered less difficult in this case as the defendant elected to put on no proof and stood on the motion for a directed verdict.

The plaintiff is a man fifty-one years of age, partially blind and has been so most

all of his life. Previous to the day of the injury, plaintiff had been an employee of the defendant, but was not an employee at the time of the injury. Plaintiff had worked for defendant about four or five months in 1962 as an operator of, what is termed in the record, a "Dynamaster" machine. The business of the defendant is automobile engine rebuilding, the sale of rebuilt engines, the sale of new and used auto parts and the purchase of junk cars in order to cannibalize the wreck for parts for reconditioning and resale.

On the morning of the day of the injury plaintiff went to defendant's place of business to inquire of the owner if he had a head for a Cadillac engine. Plaintiff was repairing a Cadillac engine and believed one of the engine heads to be cracked and needed another. Mr. Smith, the owner of the defendant corporation, advised plaintiff that he did not have a reconditioned Cadillac head on hand but to come back late in the afternoon as he might have one available at that time.

The defendant's business functions are carried on in a Quonset type building. An aisle runs down the middle of the building, passes between engine storage and work areas and continues to the rear of the building where the parts department and an office are located as well as the rear door to the junkyard. To the right, as you come in the front door is the engine rebuilding department and next to it, on the same side of the building, is the Dynamaster machine. The Dynamaster is a machine used to check a rebuilt engine block for balance, knocks, etc. If the engine fails the Dynamaster test, it is wheeled on a table with casters back to the engine rebuilding department for further work. In the process of checking the engine on the Dynamaster machine, about one quart of oil is placed in the engine, which oil because of the incomplete assembly of the engine, assisted by the force of gravity, leaks out and is allowed to drain upon the floor. A product known as "Oil-Dry" is supposed to be placed on the floor by the defendant's employees whenever oil is spilt. "Oil-Dry" is a clay-like substance which absorbs oil and is thrown or sprinkled on the area of oil and allowed to remain on the floor until the accumulation is too great and becomes too crusty to walk on, then it is scraped off the floor and the process starts all over again. Engines do not often fail the Dynamaster test, but when they do, they are returned to the engine rebuilding department for additional work, where oil drains out of them onto the floor.

When plaintiff returned about 5:00 p. m. to see if Mr. Smith had found the Cadillac engine head, plaintiff entered through the front door and went about fifteen feet over to Mr. Leek, the engine rebuilder, to inquire if Mr. Smith was there and if the head was ready. As it happened, Mr. Smith was out and plaintiff talked in general with Mr. Leek for some few minutes. While conversing with Mr. Leek, plaintiff was standing next to an engine that was on a caster wheel table. When plaintiff turned to leave, he slipped in a puddle of oil, fell and in the process of falling struck the bottom portion of the table upon which an engine rested. This caused the engine to fall from the table upon the plaintiff's knee. The engine weighs between two hundred and three hundred pounds. The plaintiff suffered serious injuries.

It was plaintiff's contention that under the circumstances he was an invitee to the premises and the defendant breached that duty of reasonable care owed to an invitee.

It was the position of the defendant that plaintiff was a licensee in regard to the portion of the building where the injury occurred and defendant's duty was therefore only not to intentionally harm plaintiff.

Plaintiff testified that it was not unusual for customers to come to the engine repairing department to watch an engine being rebuilt. Further, that customers usually did business with Mr. Smith wherever they could find him about the premises.

Mr. Leek, the engine rebuilder, testified that customers came into the engine rebuilding area of the building whenever they wanted to. Sometimes they came in to watch an engine being rebuilt, and on other occasions, since he was the first one a customer would see upon entering the building, customers would come to him to inquire of Mr. Smith's whereabouts or for directions to get to various other departments of the building.

■■ In light of the foregoing proof, reviewed in a manner most favorable to the plaintiff, we find it impossible to follow the urgings of counsel for appellant and say that as a matter of law the plaintiff was not an invitee, but was in fact a licensee and reasonable minds could not differ on the point. Under these facts the jury could, as they did, find that the plaintiff was an invitee. The duty of the owner to the invitee is not limited to a specific area, but extends to such other parts of the premises as may be reasonably expected to be visited by the invitee in the course of the visit. Hatcher v. Cantrell (1933 M.S.) 16 Tenn.App. 544, 65 S.W.2d 247. To determine what is "reasonable" or "reasonably expected" under a given set of circumstances is one of the main functions of a jury. The Trial Judge, under proper instructions, submitted to the jury the question of whether, under the circumstances, the plaintiff was an invitee or licensee, and we find no error in that action.

Counsel for appellant argues that plaintiff is guilty of contributory negligence as a matter of law because he failed to look where he was stepping, failed to see the oil on the floor and avoid it, and that the danger was equally known to the plaintiff as well as to the defendant. Also, it is argued that plaintiff failed to adhere to the higher standard of care required of those with defective vision.

Plaintiff testified that he saw no oil on the floor, went over to ask Leek about Smith and remained to talk with Leek a minute or two. Plaintiff further testified that accumulations of oil were usually found in the area around the Dynamaster machine but he did not expect a large accumulation of oil in the engine rebuilding department area where he fell. Furthermore, even when there had been an oil spillage, "Oil-Dry" was supposed to have been placed on the floor to prevent someone from falling. Plaintiff further testified that he had no knowledge that the engine from which the oil was leaking had been on the Dynamaster machine.

Leek testified that when the plaintiff approached, he looked up, greeted him, returned to his work and answered plaintiff's inquiry while concentrating on his work. Leek further testified that he was aware of oil spillage; that "Oil-Dry" was available, but he had not applied it as he had been too busy and had not the time to do so and that he did not caution plaintiff about the spillage. Further, that undue difficulties had been experienced with the engine that was leaking oil and it had been returned from the Dynamaster machine on three or four occasions that same day.

■ It is not our understanding of the law, that it is the duty of the invitee to be wary of every step for fear a moment's inattention or a misstep would bring about instant destruction as if land mines had been implanted on the premises. The duty of the invitee and the owner are identical. Each is under a duty to exercise reasonable care. The former must exercise reasonable care for his own safety and the latter must exercise reasonable care for the safety of the other. Gargaro v. Kroger Grocery & Baking Co. (1938 W.S.) 22 Tenn.App. 70, 118 S.W.2d 561. The term reasonable care has a relative significance and cannot be arbitrarily defined. Such questions are for the jury. Croson v. Marsh (1926 E.S.) 12 Tenn.App. 33. Where there is material evidence that either party to an action has acted with lack of care, a jury question is created. Bailey v. Alloway Bros. Co. (1945 M.S.) 29 Tenn.App. 1, 192 S.W.2d 849. Generally,

where the question of contributory negligence is involved based upon plaintiff's alleged failure to see and avoid a defect, the determination of that issue is for the jury. Kendall Oil Company v. Payne (1955 E.S.) 41 Tenn.App. 201, 293 S.W.2d 40, certiorari denied 200 Tenn. 600, 293 S.W.2d 43. It is only when the evidence is free from conflict and the inference from that evidence is so certain that all reasonable men in the exercise of free and impartial judgment, must agree upon it, that a Court may direct a verdict. Spain v. Livingston (1968 E.S.) 59 Tenn.App. 346, 440 S.W.2d 805. We hold that from the proof adduced in this case reasonable men could differ on the issue of whether plaintiff was contributorily negligent. Therefore, we cannot hold that the Trial Court erred in failing to find that as a matter of law the plaintiff was guilty of contributory negligence so as to bar recovery.

■ Neither can we hold that as a matter of law the plaintiff "assumed the risk" and is barred from recovery. Counsel for defendant relies heavily upon the cases of Gargaro v. Kroger Grocery & Baking Co., supra, and Park v. Sinclair Refining Co. (1940 E.S.) 24 Tenn.App. 204, 142 S.W.2d 321, to sustain the position that plaintiff "assumed the risk" as a matter of law. The Gargaro case is not applicable on this issue to the instant case. True, in Gargaro, the Court applied the doctrine of Assumption of Risk; but because of the undisputed facts of the case. Now let us examine the facts of the case. First, the plaintiff had knowledge of the fact that grocery baskets were left on the floor in the area in which she was walking and that they were allowed to remain there. In fact, plaintiff had participated in such procedure. From this, the Court found that all reasonable minds must be impelled to the one conclusion that plaintiff had actual knowledge of the true condition existent in the area in which she fell. Second, it was not a question of what the plaintiff *should* have known, but was the fact of what the plaintiff was *bound* to know.

Therefore, from the undisputed proof the plaintiff actually knew of the peril, appreciated it and exposed herself to it.

The same result was also reached by the same reasoning in the *Park* case, supra. There, Mr. Park with full knowledge of the existence and the location of an open grease pit, walked into the area of the pit in the nighttime, fell into the pit and was fatally injured. Mr. Park risked the injury when he walked in the dark into the very area where he knew was located an open deep pit. It was not a question of what Mr. Park should have known.

In the instant case, plaintiff testified (a) he did not have knowledge of the existence of the oil puddle, (b) it was not supposed to be there without "Oil-Dry" having been spread upon it and (c) he did not expect it to be there as usually there was no appreciable amount of oil drain in the engine rebuilding department. In the face of that proof, how can we say that plaintiff knew or was bound to know as a matter of law that oil was generally spilled in the area where he fell and that "Oil-Dry" was not applied to it when it was spilled and therefore he was bound to know that the area was covered with oil puddles and dangerous? We cannot.

The Trial Court committed no error in failing to direct a verdict on the grounds of assumption of risk.

There is ample evidence in the record as heretofore, in part, set out to sustain the verdict.

Now, as to the charge of the Court. First, the Court charged the jury the law regarding invitees and licensees and then instructed them that they must determine plaintiff's status under the circumstances, that is, invitee or licensee, and if they found plaintiff to be a licensee there could be no recovery. The Court charged the doctrines of negligence, contributory negligence, distinguishing between proximate contributory negligence and remote contributory negligence, the duties of owners

to invitees, the duties of an invitee including those of looking out for his own safety, and the greater duty of invitees having defective sight and charged that if the danger was obvious, reasonably apparent, or as well known to the plaintiff as to the defendant there could be no recovery by the plaintiff.

 By the fifth Assignment of Error it is argued that the Court erred in failing to charge the doctrine of Assumption of Risk. It would appear from the record that some 29 special requests to charge were made by counsel for defendant. In the brief, particular reliance is made on the Court's failure to charge Special Request No. 27. Several of the special requests to charge seem to fairly state the doctrine of Assumption of Risk, some calling it assumption of risk and others calling it contributory negligence. This is evidence of the fact that the doctrines are often confused and are sometimes used interchangeably by lawyers, Courts and text writers. We are of the opinion that the Trial Judge did not err in refusing to charge the doctrine of Assumption of Risk. We say this because the technical doctrine of Assumption of Risk has no place in this lawsuit. All the proof in this case is to the effect that plaintiff did not observe the oil puddle on the floor. In the case of Rogers v. Garrett (1965) 217 Tenn. 282, 397 S.W.2d 372, Justice Chattin speaking for the Court delineated the elements of the doctrine of Assumption of Risk, viz: "(1) Knowledge of the danger, (2) an appreciation of that danger, and (3) voluntary exposure to that danger."

 In the case at bar, there is no proof of actual knowledge of the danger. The proof is to the contrary. Neither is there proof from which we must conclude that plaintiff was bound to know of the danger. Therefore the application of the doctrine is inappropriate because the proof

fails of the first element. The question raised for jury determination by the proof in this case was whether the plaintiff *should* have observed the danger and avoided it. That question can be stated as: Should a reasonably prudent man have observed the danger under all the circumstances and avoided it? When the question or issue is so framed, it is easily perceived that determination of the issue requires the application of the "reasonably prudent man" rule, which is nothing more than the yardstick by which other men measure negligence or its counterpart, contributory negligence.

 Knowledge is the keystone which holds up the doctrine of Assumption of Risk. Nothing more or nothing less than actual knowledge is required. If the proof raises the question of whether a reasonably prudent man would or should have discovered the danger and avoided it, the issue of contributory negligence is created and not one of assumption of risk. What a reasonably prudent man would or should have done under the circumstances is a matter for jury determination.

 Admittedly, there would seem to be a great difference of opinion among Courts and legal scholars of the nation regarding the distinction between the doctrines of Assumption of Risk and Contributory Negligence. Some hold there is no distinction, others hold there is no practical distinction and yet others hold the doctrines are distinguishable. See 57 Am.Jur. 2d § 274 et seq. and 82 A.L.R.2d 1218. Generally, where the distinction is made, it is on the basis that the elements of Assumption of Risk are actual knowledge of the danger and intelligent acquiescence in it; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct. We submit that such distinction is a proper one.[1] Therefore, when the question is what

---

1. See the case of Cincinnati, N. & O. & T. P. Ry. Co. v. Thompson (6 Cir. 1916) 236 F. 1, 149 C.C.A. 211, wherein we think the distinction is appropriately set out.

should a plaintiff have observed, that question is one that is to be answered by the application of the rules of negligence and should not involve the doctrine of Assumption of Risk. We think this in essence, was the holding in the *Gargaro* case.

The Trial Court charged the jury the doctrines of proximate, contributory and remote contributory negligence and also charged:

"An owner of a business is not liable to an invitee for injuries sustained from the dangers that are obvious, reasonably apparent, or as well-known to the customer as to the proprietor."

Under the facts of this case, the Trial Judge was not authorized to charge the doctrine of Assumption of Risk. He adequately charged the applicable doctrine of negligence and we find no error in his refusal to charge the doctrine of Assumption of Risk.

The fifth Assignment of Error is overruled.

The Declaration of the plaintiff charges the defendant with negligence in having for use an improperly balanced work table and in placing a heavy automobile engine near the edge of that caster wheeled work table. During the course of the trial, the plaintiff did seek to show that the work table was improperly designed. Appellant's sixth Assignment of Error is to the effect that the Trial Court erred in not specifically charging the jury, as requested, that the only issue of negligence on the part of the defendant was the condition of the floor and the condition of the table was not to be considered in the determination of negligence.

We are of the opinion that the sixth Assignment of Error is without merit. This Assignment of Error coupled with the first admits that there was actually only two real issues in the whole lawsuit. The first was the status of the plaintiff, that is, licensee or invitee; and the second was the oil puddle on the floor. As the proof developed, the condition of the table faded into obscurity as an issue. In explaining the issues to the jury, the Court charged them that the plaintiff's theory was:

"He slipped on a puddle of oil causing him to fall and to be injured, that he was an invitee upon the premises, and that the defendant was negligent in that he failed to maintain the premises in a reasonably safe condition in that there was a puddle of oil on the floor and in failing to warn the plaintiff of the presence of the oil and in failing to take reasonable precautions for the safety of those invited to use the premises."

Nowhere in the Court's charge of the theory of the parties is the condition of the table referred to or mentioned as an issue for consideration in the establishment of liability. We are of the opinion that the Court in its charge, properly confined the matter to the real issues of the case. It is our opinion that no harm was caused by the exclusion of the requested charge, just as in our opinion, no harm would have been caused by its inclusion. As we view it, the failure to give the requested charge did not have any effect on the verdict of the jury. At the most it was harmless error, T.C.A. § 27–117. We cannot reverse for matters which, in our opinion, would not alter the outcome of the litigation.

It results that all Assignments of Error are overruled and the judgment of the Trial Court is affirmed.

Cost of appeal is adjudged against appellant and the surety on its bond.

So order.

CARNEY, P. J., and MATHERNE, J., concurs.