John D. McCORMICK, Petitioner,

v.

James WATERS, Respondent.

Supreme Court of Tennessee.

Feb. 18, 1980.

Gerald Largen, Kingston, for petitioner.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, for respondent.

## OPINION

HENRY, Justice.

This negligence action arose as a result of an injury to plaintiff's shoulder sustained when a barn loft, into which he was stacking bales of hay, collapsed.

The jury found defendant liable and awarded $6,000.00 in damages. At the conclusion of plaintiff's proof, and again at the conclusion of all the proof, defendant moved for a directed verdict. The trial court denied both motions and submitted the case to the jury on the theory that defendant had a duty to maintain the premises in a reasonably safe condition. After the jury returned its verdict for plaintiff, defendant Waters renewed his motion for a directed verdict; the motion was denied.

The Court of Appeals reversed, holding that the Trial Judge erred in failing to sustain defendant's motion for a directed verdict. According to the Court of Appeals, plaintiff had shown, not that defendant failed to exercise ordinary care and diligence in maintaining the loft, but only that the loft had collapsed, that the plaintiff was injured, and that the loft might have been negligently constructed—in sum, insuffi-cient evidence to put the question of negligence to the jury.

Plaintiff asserts that the Court of Appeals erred in reversing the trial court and maintains that the Court of Appeals overlooked the proper rule of law to be applied in this case, i. e., that the landowner has a duty to a business invitee/worker to provide a safe place to work. We agree.

It is not disputed that defendant was the owner of the premises, that plaintiff, a business invitee/worker, was injured while working for defendant on his property, and at his request. We conclude that defendant property owner was obligated to use ordinary care to maintain his premises in a reasonably safe condition for those invited on his land and, more specifically, that he should have maintained his premises—in this instance, the loft—in such a way that an invited workman would have a safe place to work. This he did not do.

I.

On August 27, 1971, John McCormick was stacking bales of hay in the newly constructed loft of James Waters' barn when the loft suddenly gave way. As a result McCormick fell and was injured.

The barn was on the property when Waters bought the land. It is a ramp barn and sits up against a slight rise so that on one side of it a road leads up to the opening of the upper level. It was through this entrance to the barn that McCormick was unloading bales into the barn loft for storage.

The barn, as originally built, had no loft. When Waters decided to add a loft for the storage of hay, his father, who helps Waters run the farm, contacted and hired Wallace Brogdon to do the construction. Occasionally, in the past Brogdon had worked on Waters' farm, but at the time he was hired to build the loft, he was hired solely for that purpose. Brogdon had previously built such structures, and neither Waters nor his father participated in or supervised the construction. According to his testimony, Brogdon used standard construction in

building the loft. However, the record shows that he did not use braces or bridging; the loft was "toe nailed" in place.

Waters, Sr., inspected the loft after it was completed and "found nothing wrong with it." Waters, Sr., retired by this time, had previously worked as a construction estimator. Defendant Waters, the son and owner of the property never saw the loft until after the accident. Waters, Sr., testified that McCormick had taken a look at the loft and had expressed agreement that it passed muster. McCormick denied that he inspected the construction and testified further than he did not view the loft from below, but saw it from above as he unloaded bales from the truck.

Waters' father hired McCormick to cut and bale hay and load the bales into the loft. As McCormick and helpers were in the process of stacking bales in the loft, it collapsed without warning. McCormick, upon whom hay had fallen, was taken to a nearby hospital, admitted and treated for seven days, primarily for a shoulder injury. At the time of the collapse about 200 to 250 bales of hay had been stacked on the loft floor. Whether the bales had been stacked in such a way as possibly to contribute to the collapse of the loft, *i. e.*, all in one corner or stacked too high, was the subject of conflicting testimony.

A neighbor, Joe Browder, testified by deposition, that he had told both Brogdon and McCormick that the loft construction would not hold up under all the bales of hay that eventually would be stored in the loft.

## II.

There are two ways to characterize the legal relationship between Waters and McCormick from which a duty arises under which Waters must exercise some care for the protection of McCormick against injury. First, Waters was a landowner and McCormick was on the land at his invitation to do business for him. In addition, Waters, as the land and barn owner, was providing a place for McCormick to work.

Owners and occupiers of land have an obligation to exercise ordinary care and diligence in maintaining their premises in a safe condition for invitees. *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn.App.1973). Proprietors are under an affirmative duty to protect invitees, among them business visitors, not only against dangers of which they know but also against those which with reasonable care they might discover. *Illinois Central Railroad Co. v. Nichols*, 173 Tenn. 602, 118 S.W.2d 213 (1937).

On the other hand, possessors of land are not insurers of the safety of invitees. The proprietor will not be held liable if the dangerous or defective condition is obvious, reasonably apparent, or as well known to the invitee as to the owner. *Paradiso, supra; Illinois Central Railroad Co., supra.*

This duty of the owner or occupier of the land arises from the position of control which this person in possession occupies; he is the person normally best able to prevent any harm to others. *See Paradiso, supra.* This same position of superior knowledge and control gives rise to the requirement that the possessor of land exercise ordinary or reasonable care to provide a reasonably safe place for the performance of work by employees. *Stringer v. Cooper and Cooper Office Equipment, Inc.*, 486 S.W.2d 751 (Tenn.App.1972).

The corollary to the owner or occupier's duty to exercise reasonable care is the business invitee's equivalent duty to exercise reasonable care. *O'Brien v. Smith Bros. Engine Rebuilders, Inc.*, 494 S.W.2d 787, 791 (Tenn.App.1973); *Gargaro v. Kroger Grocery and Baking Co.*, 22 Tenn.App. 70, 118 S.W.2d 561 (1938). We emphasize that the term reasonable care is not susceptible of one definition but must be given meaning in relation to the circumstances. *O'Brien, supra* at 791.

Where either party comes forward with material evidence that the other has acted with the lack of care necessary under the circumstances, a jury question is created. It is also for the jury to determine

whether a plaintiff has failed to see and avoid a defect and thus has failed to meet the duty to· exercise reasonable care. *O'Brien, supra.* A court is expected to direct a verdict for the defendant, however, when the evidence presented is clear, not conflicting, and where the only inference a reasonable person exercising his own judgment, could make is that the defendant has not been negligent. *O'Brien, · supra; Stringer,. supra.*

### III.

In the case at bar, then, we find that Waters had a general duty to exercise ordinary care in maintaining his premises in a safe condition for the invitee, and more specifically, a duty to exercise this care to provide McCormick a reasonably safe place to work. "Anyone invited to transact business . or do work on private premises not open to the public normally has the assurance that the place is prepared for him. . . ." W. Prosser, *Law of Torts* § 61 (4th ed. 1971); *see also Hall v. Duke,* 513 S.W.2d 776 (Tenn.1974). McCormick, in turn, was responsible for exercising reasonable care to recognize visible defective conditions in his place of work and to avoid them to prevent injury.

We cannot say, as a matter of law, that Waters did not breach his duty to provide a safe place to work. There was testimony that no bridging or bracing was used in the construction of the loft. At least two witnesses testified that the loft was nailed in place. Waters knew the loft would have to be capable of holding quite a load—the barn loft collapsed under only a part of the bales intended for storage in the area. The jury could have inferred from this testimony that Waters had failed to do what was necessary to provide McCormick a safe place to work.

Neither can we say, as a matter of law, that McCormick was contributorily negligent. We cannot require a worker to be a virtual inspector of the premises where he works seasonally. Had the barn loft flooring sagged visibly or had there been some obvious defect, we would expect the worker to have taken action to avoid possible injury. McCormick could see no problems, no obvious defects in the construction of the loft. He was hired by Waters to load bales of hay into the loft, and we think it reasonable for him to assume· that the loft was capable of holding the bales. McCormick might have been prompted to inspect the loft construction had he relied on neighbor Browder's remarks. His testimony reveals, however, that he placed more reliance on the fact that the loft was newly constructed, and therefore presumably sound, and that Waters, Sr., a person experienced in such matters, had taken a look at the loft.

Based on the somewhat slim but adequate evidence in this record, we agree with the Trial Judge that this case was one which had to be submitted to the jury. We reinstate the judgment of the Trial Court.

Reversed.

BROCK, C. J., and FONES, COOPER, and HARBISON, JJ., concur.