Lawrence Woodrow MULLINS,
Plaintiff-Appellee,

v.

PRECISION RUBBER PRODUCTS
CORPORATION,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 8, 1984.

Permission to Appeal Denied by
Supreme Court May 21, 1984.

Thomas C. Corts, William A. Cragg, Ortale, Kelley, Herbert & Crawford, Nashville, for defendant-appellant.

William Ritchie Pigue, Robert E. Kolarich, Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, Charles R. Terry, Morristown, William L. Jenkins, Rogersville, for plaintiff-appellee.

## OPINION

CONNER, Judge.

This is an appeal of a jury verdict rendered against defendant-appellant, Precision Rubber Products, in favor of plaintiff-appellee, Lawrence Woodrow Mullins,[1] who was awarded $125,000.00 due to injuries sustained during a fall on defendant's premises. The sole issues involve the applicability as a matter of law of the doctrines of assumption of the risk and contributory negligence.

The incident giving rise to the complaint occurred in June of 1980 when the plaintiff, a truck driver, came to defendant's plant to pick up products for his employer. Mr. Mullins, age 49, was a frequent visitor to Precision Rubber, having made pickups at a particular loading dock at least weekly for approximately one year.

Adjacent to the loading dock there originally was a set of steel steps and a safety guardrail to aid employees and others who needed to climb onto the dock area. However, this stairway was removed by the defendant in order to install some machinery several months prior to the accident.

In the absence of stairs, defendant's employees leaned a wooden skid next to the dock to enter and exit this particular loading area. Mr. Mullins had used this skid for access for a period of about five months on his visits to Precision Rubber without previous incident. The skid, of the type used with forklifts to move products from one place to another, consisted of boards nailed together at irregular intervals and was used much as one would use a ladder to climb from the ground to the dock. The skid leaned up against the back of the building and one had to grab hold of the wall or a nearby pole to swing up onto the loading dock. The skid would rock slightly while a person was on it, but the skid did not move or slip and it was not broken or defective as such when Mr. Mullins fell. The initial step to descend the skid was an extra long step and a difficult maneuver, but plaintiff had done this successfully before. Of course, having negotiated it on numerous occasions Mr. Mullins was aware of this entire procedure required to go up and down on the skid.

In addition to the makeshift ladder, the spring-loaded mechanism on the loading dock was inoperative on the day of the accident. As a result, the dock board had to be lifted up manually so that delivery trucks could back up under the ramp. Mr. Mullins testified that one of the defendant's employees raised the board with his help, prompting him to thereafter rush down the skid to his truck in order to be able to drive it into proper position while the dock board was being held up by the other person.

A He had to take some kind of bar and prize it up where you could back your truck underneath it.

Q Did he take a bar and prize it up?

A Yes, sir.

Q And once he had taken the bar and prized it up, did he make any request of you?

A After he prized it up, he said, hurry, I can't hold it long.

A And it was on that occasion when you went back down this skid to get to your truck to back it under the ramp that this accident occurred?

A Yes, sir.

Mr. Mullins' foot slipped on the skid and he fell to the ground, causing the injuries that resulted in this lawsuit.

The case was first tried on May 17, 1982, and a mistrial was declared after the jury was unable to reach a unanimous decision. The defendant thereafter moved for sum-

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

mary judgment, which was denied. A second trial was held on February 4, 1983. At the conclusion of the plaintiff's proof, the defendant moved the court for a directed verdict, which was denied. After the jury then found in favor of plaintiff, Precision Rubber filed a motion for judgment notwithstanding the verdict. That too was denied, and this appeal timely followed.

The question of negligence on the part of the defendant is not really in issue here. It was conceded by George Harding, a representative of Precision Rubber, that the wooden skid is not a safe mechanism for entering and exiting the dock area. In response to requests for admissions, the defendant agreed that "[t]he reasons that a skid is dangerous and unsafe are because the wood can break, the skid could slip *or a man could miss his step.*" (Emphasis supplied.) The proof was also clear that the use of the skid in place of a stairway was in violation of state and federal occupational safety regulations.

In fact, the defendant chose to offer no proof whatsoever but instead argued at the trial level, as it does now, that based on plaintiff's own proof he was contributorily negligent and/or assumed the risk. Thus, Precision Rubber contends that the trial court erred in denying the motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

■ Since the trial court's denial of the summary judgment was predicated upon the existence of a genuine issue of fact, that decision is not reviewable where there has been a judgment rendered after a trial on the merits of the case. *Tate v. Monroe County*, 578 S.W.2d 642, 644 (Tenn.App. 1978). As for the motions for directed verdict, either under T.R.C.P. 50.01 at the close of proof or under T.R.C.P. 50.02 seeking to have the verdict set aside, the scope of review, as is also the case with jury findings, is quite limited:

Those rules require that the trial judges and the appellate courts take the strongest legitimate view of the evidence in favor of the petitioner, allow all reasonable inferences in his favor, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusion to be drawn from the whole evidence. A verdict should be directed only where a reasonable mind could draw but one conclusion.

*Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980).

In considering whether a directed verdict was appropriate, we are concerned in this case with the applicability of the doctrines of assumption of the risk and contributory negligence. The distinction between these two concepts was stated concisely in *O'Brien v. Smith Brothers Engine Rebuilders, Inc.*, 494 S.W.2d 787 (Tenn.App. 1973):

Knowledge is the keystone which holds up the doctrine of Assumption of Risk. Nothing more or nothing less than actual knowledge is required. If the proof raises the question of whether a reasonably prudent man would or should have discovered the danger and avoided it, the issue of contributory negligence is created and not one of assumption of risk. What a reasonably prudent man would or should have done under the circumstances is a matter for a jury determination.

*Id.* at 793.

Assumption of the risk reflects a demonstration of "actual knowledge of the danger and intelligent acquiescence in it; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct." *Id.*

■ Consideration of the plaintiffs' knowledge and acquiescence resolves into a determination of whether three basic requirements are met. To fulfill the assumption of the risk test in Tennessee, the plaintiff must (1) discover the defect, (2) *fully understand the danger it presents*, and then (3) disregard this known danger and voluntarily expose oneself to it. *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516, 522 (Tenn.1973) (emphasis supplied).

Defendant relies heavily upon three Tennessee cases in which assumption of the risk was found to exist—*Merritt v. Carr*, 621 S.W.2d 740 (Tenn.App.1980); *Frazier v. Moore*, 651 S.W.2d 240 (Tenn.App.1983); and *Kynch v. Tenoke Associates* (Tenn. App. filed April 5, 1983, at Jackson). However, we believe all three decisions are distinguishable from the case now before us.

In *Merritt*, a dairy employee sustained injuries when a cow tripped over an open drain in a holding pen and fell on him. The plaintiff was found to have assumed the risk in light of his own testimony that he recognized the danger of the open drain and, in fact, had suggested to the owner of the premises that he get covers for the drains. 621 S.W.2d at 742.

In the *Frazier* decision, in which the plaintiff was injured when a scaffolding board broke, assumption of the risk was found based on his own testimony that he had himself constructed the scaffolding and checked the board "sufficiently to satisfy himself that there was nothing wrong with it." 651 S.W.2d at 241.

In *Kynch*, an employee with a disabled right arm regularly chose to use a stairway that had a single handrail on the right side and no railing on the left. She lost her footing on the slick floor, was unable to catch herself with the handrail, and fell. Assumption of the risk was found by the court in light of proof that plaintiff declined the use of four available elevators and used the stairway even though she knew there was no right handrail, she knew that the stairs had been painted and were slick and "she had considered this a dangerous condition ever since she had been in the building."

In the instant case, there were no warning signs to indicate the danger of using the wooden skid and no designation of alternate entrances. It is true that Mr. Mullins could have sought out other modes of entry, though the record is silent as to just how much inconvenience would have been involved to do so; and there is no question but that Mr. Mullins had used the skid on numerous occasions in the past. Neverthe-

less, the defendant offered no proof in this case, and there is nothing to contradict plaintiff's testimony to the effect that he simply took the situation for granted *and never realized the danger of using the skid to climb up and down from the dock.*

Q Now, you testified, I think, on direct that you didn't realize that this skid was dangerous before you walked up it that day. Can you tell us now, what are you telling us now is dangerous about this skid and the way it was being used that day? What do you know now that you say you didn't know then?

A Well, if you think about it, the skid is just not wide enough to get your foot up, have a good footage coming down like you would steps, a ladder or something.

. . . .

Q Well, you know, because you'd been up it for five months, you knew before this happened that the footage wasn't as good on this or that it rocked a little bit, as you said. You knew before this happened that your footing wasn't as good on this as it would be on a staircase or a ladder. You knew that; didn't you?

A Well, I never thought much about it, because I seen everybody else was using it. I never did—

. . . .

Q Okay. You realize of course that prior to this happening, although you hadn't given it any thought, you realize that there was always the possibility that you might slip and fall trying to get in and out of the door this way; didn't you?

A I never give it no thought.

Q Well, what if you had given it thought? You would have realized it; wouldn't you?

[A] I never thought much about it, because I thought that's the only way I had of getting in and out of it, because the workers was using it. The first time that I arrived at the dock after that skid was there, there was nobody around or anything. I had to go back in the building and hunt Charlie Wilson and I asked

him, I said, what happened to the steps? He says, we're fixing to do some construction work out there. And that's about all that was ever said about that ....

■ Of course, it is possible, even in spite of such testimony, to find that a plaintiff "was *bound* to know" the danger. *O'Brien*, 494 S.W.2d at 792. The defendant argues that plaintiff's "continuous use of the skid as a ladder type device ... reveals that he was aware of the danger presented by the skid" as a matter of law. We disagree. Such a conclusion requires a leap in logic we are unable to make. We do not accept the proposition that one who uses a device later determined to be dangerous *necessarily* recognizes the risk at the time of that use.

An analogy may be drawn to the case of *Hellon v. Trotwood Apartments, Inc.*, 62 Tenn.App. 203, 460 S.W.2d 372 (1970), where the defendant argued that the plaintiff was imputed with knowledge of a dangerous condition causing him to slip and fall on a sidewalk covered with water and mud. "Just because water and mud has been observed on previous occasions does not prove that the water and mud were known to be slippery and dangerous," the court said. *Id.* at 207–08, 460 S.W.2d at 374.

We believe the case of *Overstreet v. Norman*, 44 Tenn.App. 343, 314 S.W.2d 47 (1957), is also helpful in discerning the difference in the cases cited by Precision Rubber where the danger was known and the situation here where though the circumstances of how to use the skid admittedly were known to plaintiff, knowledge of the danger incident thereto was not admitted. In *Overstreet* the plaintiff, employed as a bean picker, was transported to her place of work in a flatbed truck. There were no steps for her to use when she alighted from the truck. A fellow employee turned a bean hamper upside down for plaintiff to use as a step. The plaintiff fell as she stepped from the truck to the hamper. The defendant requested a directed verdict on the basis of contributory negligence and

assumption of the risk. The court denied the request and submitted the issue to the jury. The appellate court upheld a verdict for the plaintiff:

In this case, we think this duty upon defendant to furnish plaintiff a reasonably safe place and safe appliances for the work included a reasonably safe means of alighting from the truck.

....

A servant does not assume a risk caused by the master's negligence *unless such risk is obvious or is actually known and the danger appreciated by the servant....*

*Upon the evidence we think reasonable minds well might differ as to whether plaintiff knew the risk or appreciated the danger of attempting to dismount as she did, and as to whether she was negligent in doing so.*

*Id.* at 349–50, 314 S.W.2d at 50–51 (emphasis supplied).

■ Examining the evidence in the light most favorable to plaintiff and allowing all reasonable inferences in his favor, as did the *Overstreet* court, we too find that reasonable minds could differ on the issue of assumption of the risk, and that the trial court acted properly in submitting the question to the jury.

■ Likewise, we believe that a directed verdict would have been improper as to the contributory negligence question. The major consideration on this issue is not what the plaintiff actually knew about the danger of using the wooden skid or what he was bound to know as a matter of law. Rather the question is what he should have known or, as previously quoted from *O'Brien*, "whether a reasonably prudent man would or should have discovered the danger and avoided it." 494 S.W.2d at 793.

■ What a reasonably prudent person would or should have done under a given set of circumstances is generally a jury question. *Id.* "It is only when the evidence is free from conflict and the inference from that evidence is so certain that all reasonable men in the exercise of free

and impartial judgment, must agree upon it, that a Court may direct a verdict." *Id.* at 792.

Here, the plaintiff was using the same loading dock that he had used over an extended period. He used the skid for entry and exit just as he had seen it used by numerous employees of the defendant. To the extent there was a danger that he should have avoided, it was one that was overlooked by employees and management as well for several months. We cannot agree with defendant that all reasonable minds must agree that plaintiff's actions constituted contributory negligence. As was the case with the defense of assumption of the risk, we believe a jury question was raised. The jury could have resolved either or both issues in favor of the defendant. However, it did not and there is an adequate basis for that determination.

Accordingly, this cause is affirmed and remanded. The costs are taxed against the defendant.

AFFIRMED AND REMANDED.

LEWIS and CANTRELL, JJ., concur.