IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION, AT NASHVILLE

PATRICIA KIREYCZYK and,　　　　　　　)
JOHN KIREYCZYK,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs/Appellants,　　　　)
　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　Appeal No.
　　　　　　　　　　　　　　　　　　　　)　　01A01-9612-CV-00549
　　　　　　　　　　　　　　　　　　　　)
MF ATHLETIC CLUB, L.P.,　　　　　　　　)　　Williamson Circuit
THE ATHLETIC CLUB OF MARYLAND　　)
FARMS, INC., and CLUN SPORTS　　　　　)
INTERNATIONAL-NASHVILLE, INC.,　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants/Appellees.　　　　)

FILED

August 13, 1997

Cecil W. Crowson
Appellate Court Clerk

**O P I N I O N**

This is a "slip and fall" case before the Court for review of the trial Court action sustaining a Motion for Summary Judgement filed by the Defendants.

The Appellants, Patricia E. Kireyczyk and her husband, John Kireyczyk, are members of the Athletic Club of Maryland Farms, a social and athletic club operated by the Appellees. Plaintiffs were frequent visitors to the club which has various kinds of athletic equipment available for its members, including both indoor and outdoor swimming pools. There is a wooden deck located on the concrete path between the outdoor pool and the concrete patio adjacent to the clubhouse.

On June 7, 1994, Patricia Kireyczyk visited the club with her daughter and her daughter's girlfriend for the girls to practice swimming at the indoor pool. Her daughter asked to swim in the outdoor pool after swimming practice and Patricia Kireyczyk went with her daughter to the outdoor pool to test the water and see if it was warm enough for swimming. The water in the outdoor pool was too cold and Patricia Kireyczyk followed behind the two girls in returning to the clubhouse. As Patricia Kireyczyk walked across the wooden deck surface, her foot slipped out from under her. She fell injuring herself.

1

It is well at the outset to observe that few areas of modern law are more frustrating to counsel, to the Trial Court and to the Appellate Court than "slip and fall." The reported decisions are so fact-sensitive that a line of demarcation between proper disposition by summary judgement, as opposed to trial by jury on the merits, is almost imperceptible. Thus, the search for a "rule" is illusory.

The respective general duties and obligations of the parties, in this case, is not subject to dispute and is well stated by Justice Henry in McCormick v. Waters 594 S.W.2d 385, 387 (Tenn. 1980):

> "Owners and occupiers of land have an obligation to exercise ordinary care and diligence in maintaining their premises in a safe condition for invitees. Paradiso v. Kroger Co., 499 S.W.2d 78 (Tenn. App. 1973).Proprietors are under an affirmative duty to protect invitees, among them business visitors, not only against dangers of which they know but also against those which with reasonable care they might discover. Illinois Central Railroad Co. v. Nichols, 173 Tenn. 602, 118 S.W.2d 213 (1937).

> On the other hand, possessors of land are not insurers of the safety of invitees. The proprietor will not be held liable if the dangerous or defective condition is obvious, reasonably apparent, or as well known to the invitee as to the owner. Paradiso, supra; Illinois Central Railroad, Co., supra.

> This duty of the owner or occupier of the land arises from the position of control which this person in possession occupies; he is the person normally best able to prevent any harm to others. See Paradiso, supra. This same position of superior knowledge and control gives rise to the requirement that the possessor of land exercise ordinary or reasonable care to provide a reasonably safe place for the performance of work by employees. Stringer v. Cooper and Cooper Office Equipment, Inc., 486 S.W.2d 751 (Tenn. App.1972).

> The corollary to the owner or occupier's duty to exercise reasonable care is the business invitee's equivalent duty to exercise reasonable care. O'Brien v. Smith Bros. Engine Rebuilders, Inc. 494 S.W.2d 787, 791 (Tenn. App. 1973); Gargaro v. Kroger Grocery and Baking Co., 22 Tenn. App. 70, 118 S.W.2d 561 (1938). We emphasize that the term reasonable care is not susceptible of one definition but must be given meaning in relation to the circumstances. O'Brien, supra at 791.

> Where either party comes forward with material evidence that the other has acted with the lack of care necessary under the circumstances, a jury question is created. It is also for the jury to determine whether a plaintiff has failed to see and avoid a defect and thus has failed to meet the duty to exercise reasonable care. O'Brien, supra. A court is expected to direct a verdict for the defendant, however, when the evidence presented is clear, not conflicting, and where the only inference a reasonable person exercising his own judgment, could make is that the defendant has not been negligent. O'Brien, supra; Stringer, supra."

2

# SUMMARY JUDGEMENT STANDARDS AND BURDENS

Volumes have been written on various aspects of summary judgement. The two (2) inquiries in this case are, first of all, what is the standard of review applicable both to the trial courts and the appellate courts, and secondly, what is necessary for the moving party to sustain it's burden.

T.C.R.P. 56 parallels the federal rule and it has been aptly observed:

> "The abandonment of fact pleading displaced the demurrer, the motion to dismiss, and various equivalents as a means to test the sufficiency of factual allegations. The function of intercepting factually insufficient claims is now assigned to the summary judgment. As the notes of the advisory committee on Civil Rules state,
>
> 'The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "

> Fontenot v. UpJohn Company,
> 780 F.2d 1190, 1196 (5th Cir.)

Shortly after the adoption of the Tennessee Rules of Civil Procedure, Justice Harbison for the Supreme Court delineated the standards for summary judgement in language clear and concise and this standard has never changed.

> "Summary judgement proceedings in this state were authorized for the first time by Rule 56 of the Tennessee Rules of Civil Procedure. This new procedure was designed to fill a vacancy or void which had existed in prior practice and to provide a procedural step which had heretofore not existed. Under previous practice, in both the circuit and chancery courts, there had been no satisfactory intermediate step between the demurrer, which dealt only with the contents of pleadings, and a full-scale trial of a case upon the merits. The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to the facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues."

> Evco Corp. v. Ross,
> 528 S.W.2d 20, 24-25.

3

While Federal Rule 56 was adopted in 1938, it was for the next half century ". . . infrequently used. . . because it was plagued with ambiguities and restrictive interpretations." Byrd v. Hall  847 S.W.2d 208, 211 (Tenn. 1993).

In 1986, the United States Supreme Court decided *Anderson*, *Celotex*, and *Matsushita*, otherwise known as the "1986 trilogy".

Seven years later, after a number of intermediate Tennessee Appellate Court decisions had pointed the way, the Tennessee Supreme Court essentially adopted the "1986 trilogy".   Byrd v. Hall  847 S.W.2d 208 (Tenn. 1993).

The burden of the moving party is best articulated by Justice Brennan in his dissenting opinion in Celotex Corp v. Catrett 477 U.S. 317, 91 L.Ed.2d 265, 106  S.Ct. 2548.  It should be noted, that it is somewhat misleading when the opinion of Justice Brennan is characterized as a dissenting opinion as it relates to the burden of the moving party.  His dissent involves the ultimate disposition of remanding the case to the District of Columbia, Court of Appeals rather than to the trial court for trial on its merits.  As far as it deals with the summary judgement burden of the moving party, it reflects exactly the same position as is taken by Chief Justice Rehnquist writing for the majority in *Celotex*.

> "The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.  10A Wright §2727.  The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial.  If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial.. Ibid.  Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery. Ibid,; Fed Rules Civ Proc 56(e), (f).

> If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways, first, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.  See 10A Wright

4

§2727, pp 130-131; Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale LJ 745, 750 (1974)(hereinafter Louis). If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. Anderson v. Liberty Lobby, Inc., ante, at 249, 91 L Ed 2d 202, 106 S Ct 2505.

Where the moving party adopts this second option and seeks summary judgment on the ground that the nonmoving party--who will bear the burden of persuasion at trial--has no evidence, the mechanics of discharging Rule 56's burden of production are somewhat trickier. Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. See ante, at 328. 91 l Ed 2d, at 277 (White, J., concurring). Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. See Louis 750-751. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. Ante. At 323, 91 l Ed 2d, at 273. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party."

91 L.Ed.2d 265, 278-279 (Brennan dissenting).


**THE EVIDENCE**

The court must view the evidence in the light most favorable to the opponent of the motion for summary judgement. Haynes v. Hamilton County 883 S.W.2d 606 (Tenn. 1994). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Pittman v. UpJohn Company 890 S.W.2d 425 (Tenn. 1994). There is no presumption of correctness to the trial courts findings in a summary judgement case. Carvell v. Bottoms 900 S.W.2d 23 (Tenn 1995). If any doubt or any uncertainty exists with regard either to the facts or to the conclusions to be drawn to the facts, the summary judgement order must be vacated and the case remanded for trial. Byrd v. Hall 847 S.W.2d 211 and Evco v. Ross 528 S.W.2d 20.

The record contains portions of the deposition of Patricia Kireyczyk in which she is asked many questions concerning the accident and how it occurred. She testifies that she had walked across this same deck hundreds of times and had never noticed anything that made an impression on her. She did not perceive anything to be hazardous. She further testified:

5

"Q.     Do you know what it was that made you fall?  Was it the beads of water on the deck?

A.     All I know is I slid, felt myself sliding and went down the stairs.

Q.     So you don't know if it was one leaf, two leaves or the water?

A.     No.

Mr. White: or a combination of the two?

Witness:      right."

Immediately prior to the hearing on the motion for summary judgement before the trial court,     Plaintiffs filed an affidavit of Patricia E. Kireyczyk .

In this affidavit, she says in part:

"15.     As I neared the far side of the deck, approaching the steps which descend to the patio, suddenly, without warning, and without any realization of the reason, my foot slipped out from under me and I slid on the deck surface.  Desperately, I fought to regain my balance; but I was unsuccessful, falling to the deck on my right hip, right hand, and right elbow.  I slid down the steps to the bottom.  At that time, I did not know what happened or why I slipped and fell as I did.  If someone had asked me at that moment if Maryland Farms had done anything wrong or whether they could have prevented my fall, I would have said 'no'.  It was not until later  I learned the cause of my fall and the part played in my fall by the Maryland Farms Athletic Club.

16.     After regaining my composure, I walked into the clubhouse.  I was met in the clubhouse by Trent Heaton, the director of fitness, who was substituting for the manager on duty and who was dispatched by the club to investigate the accident.  I spoke first with Mr. Heaton inside the club, out of sight of the deck.  In response to his inquiry what happened, I told him I fell on the deck.  His exact words--which still ring my ears--were 'it rained and there's leaves on the deck. Huh?'  Frankly, at that point I did not appreciate the import and significance of his statement to me.

17.     Mr. Heaton and I, accompanied by Tyrone Harper, another employee of the club, walked out of the clubhouse and across the patio to the first step to the deck.  From this position, I could see clearly the deck surface which            was near eye level for me.  Spontaneously I said 'yes', to the previous statement of Mr. Heaton; i.e., 'it rained and there's leaves on the deck'.  I could see beads of water on the deck's surface in the area where I slipped.  The beads of water appeared to me like the beads of water seen on the surface of an automobile which had been waxed.  I also saw a very light scattering of leaves on the deck's surface in the area where I slipped.  I knew then what caused me to fall and why.

18.     I had a second conversation with Trent Heaton approximately one and a   half weeks after my accident, when he came in response to my repeated requests to speak with Cindy Flannigan, the club's manager.  I ask Mr. Heaton why Maryland Farms had not put up a sign warning that the deck surface is slippery when wet.  He told me that the club had planned to repair the deck two (2) weeks prior to my accident and that he would look into changes to prevent an accident from reoccurring.

6

19.     Cindy Flannigan, the club's manager, confirmed that the Defendant had planned to repaint the deck two weeks prior to my accident.

. . .

21.     I have read the motion and memorandum filed by the Defendants and reviewed my deposition testimony.  Either I misunderstood a series of questions asked me by the Defendants' attorney or the Defendants' attorney misunderstood my answers.  At the outset of my deposition I was asked a series of questions in the context, as I understood the questions, of what I knew and/or had observed before or at the time of my fall.  For example, the question was asked, 'what do you think made you fall?'.  I answered, 'I    don't know'.  Another question, '. . .what could have been done by Maryland Farms to have prevented your fall?'.  I responded 'I don't   know.'.  I answered these questions and the others asked in the same context as I thought I was asked with the knowledge I had at the time of my fall.  After I spoke to Mr. Heaton and heard his statement; i.e. 'it rained and there's leaves on the deck', and observed with him the water beads and the leaves on the deck surface, my answers to the same questions are strikingly different.  For example, to the question 'what do you think made you fall?'  My answer is, 'I slipped and fell because the deck surface was slippery with rain and wet leaves'.  To the question 'what
could have been done by Maryland Farms to have prevented my fall?', my answer is, 'the defendant could have properly and timely maintained the deck by pressure washing and repainting the surface so as to eliminate the slippery condition; or they could have dried the wet surface and removed the wet leaves; or they could  have placed a sign nearby warning that the deck was slippery when wet and/or they could have roped off the deck, preventing persons from crossing the deck when slippery'."

Section 21 of the affidavit of Mrs. Kireyczyk is almost inconceivable, but if, she indeed misunderstood questions on the deposition and the matters set forth in the other portions of her affidavit are taken as true, as they must be under the summary judgement standard, then her credibility must be judged by the trier of fact, not the trier of law.  If, Mr. Heaton made the statement attributed to him about rain and leaves on the deck and if, he told her that the club had planned to repair the deck two (2) weeks prior the her accident in order to prevent an accident, and if, this statement was reiterated by Cindy Flannigan, the club's manager, then a trier of fact could find that the Defendants had knowledge superior to that of the Plaintiff, that rain and leaves on the deck created a slippery condition that could result in the kind of injury suffered by the Plaintiff.

When this evidence is coupled with the affidavit of Judy Allen, a member of the athletic club, familiar with deck, wherein she states that the deck was slippery when wet and especially when there were leaves on top of the wet surface and that she had in fact

7

slipped herself, although she had not fallen, we have genuine issues of material facts regarding causation, dangerous condition and notice. Thus, summary judgement is inappropriate.

## CONCLUSION

This is a thin case for the Plaintiff and the differences between the deposition testimony of Patricia Kireyczyk and her affidavit testimony are perilously close to being such inconsistent statements as to render them probatively valueless. Price v. Becker 812 S.W. 2d 597. At this point, however, the question is not whether reasonable minds will differ after hearing all of the evidence, but whether reasonable minds could differ on the facts in the present record.

Burgess v. Harley 934 S.W.2d 58 (Tenn. App. 1996) was before this Court in a different context, but involved the same principle that prevents summary judgement in the case at bar. In *Burgess* this Court observed:

> "Mr. Harley's credibility has been seriously undermined. We would not second-guess the trial court's decision to give his testimony no weight if this were an appeal from a bench trial. This is, however, an appeal from a summary judgment. Notwithstanding Mr. Harley's practically insurmountable credibility problems, his different accounts of the events immediately before the collision give rise to a genuine factual dispute concerning the condition of his brakes and their effect on his ability to avoid the accident. Resolving these issues now would require us to weigh the evidence and to judge Mr. Harley's credibility - two things we cannot do in a summary judgment proceeding."

>                                 Burgess v. Harley
> _____          934 S.W.2d 58, 67 (Tenn. App. 1996)


**The Summary Judgement granted by the trial court is vacated, and the case remanded for trial on the facts.**

                                        _____
                                        **WILLIAM B. CAIN, JUDGE**

**CONCUR:**

_____
**HENRY F. TODD,**
**PRESIDING JUDGE, MIDDLE SECTION**


_____
**WILLIAM C. KOCH, JR., JUDGE**