**D. Clyde HAGA, Plaintiff-Appellant,**

v.

**BLANC & WEST LUMBER COMPANY, INC., and Adrian Blanc, Defendants-Appellees.**

Supreme Court of Tennessee, at Knoxville.

March 5, 1984.

C. Douglas Berryhill, Jefferson City, for plaintiff-appellant.

Douglas Dutton, Knoxville, for defendants-appellees; Hodges, Doughty & Carson, Knoxville, of counsel.

## OPINION

BROCK, Justice.

This is an action to recover damages for personal injuries suffered by the plaintiff when he fell from a stack of lumber on the business premises of the defendants. The jury returned a verdict for $30,000.00 in favor of the plaintiff and against both defendants which was approved by the trial judge. On appeal to the Court of Appeals, that court in a two-to-one decision, Judge Franks dissenting, reversed the judgment in favor of the plaintiff and directed a verdict for the defendants. We granted discretionary review.

The plaintiff is engaged in the business of constructing residential housing in Jefferson County and on Saturday morning, March 1, 1980, the plaintiff went to defendant Blanc and West Lumber Company in Jefferson City, Tennessee, to purchase two boards, 2″ × 10″, 14′ in length, for which he had an immediate need in his construction business. After placing his order for this lumber in the sales office of the defendant corporation and after making payment for it, he drove his truck, accompanied by Adrian Blanc, a lumber company employee, to the lumber shed a short distance away.

Plaintiff testified that Mr. Blanc measured the lumber and told him that he would have to get his boards off a certain designated stack. The lumber under the shed was stacked in rows, end to end, with spaces between the stacks. The stacks consisted of bundles of a number of boards strapped together. The strapped bundles were stacked, one on top of the other, from the ground or floor up several feet in height.

The plaintiff testified that Mr. Blanc did not make any effort to get the purchased lumber down from the stack nor offer the assistance of another employee, that he, the plaintiff, climbed between two adjacent

stacks of lumber to a position where he could reach the purchased boards and proceeded to throw them off the stack onto the ground. Defendant Blanc picked the lumber off the ground and placed it in the plaintiff's truck.

The plaintiff explained that the bands on both the stack from which he had removed the lumber and the adjoining stack were broken and that as he began to descend from the stacks, the boards began to slide, causing him to lose his balance and to fall backwards to the ground receiving serious and disabling back injuries. He stated that if either bundle had been secured he would have been able to maintain his balance and would not have fallen. He further stated that he first noticed that the lumber on the adjoining stack was loose after he had climbed to the top, his attention theretofore having been directed to the stack from which the boards he was purchasing were located.

Mr. Blanc testified that it was dangerous to have persons climbing on loose lumber; that customers did load their own purchases, occasionally, but that it was a practice the company did not deem to be safe but, nevertheless, had not attempted to prohibit or discourage. Normally, bundles of lumber were brought down to the ground with a fork lift prior to the bindings being cut so that no climbing to obtain individual boards would be required. However, the unbound lumber in the instant case was left stacked in order to keep it under the protection of the shed and out of the elements.

Mr. Blanc further testified that he had prior knowledge that the bindings on most of the top bundles under the shed were broken and that he knew prior to the plaintiff's climb on this occasion that the bindings on both the stacks used by the plaintiff to support himself had been broken. However, Mr. Blanc did not warn the plaintiff nor offer any assistance to him.

In his complaint, the plaintiff alleged that the defendants were negligent in removing the bands from the stacks of lumber from which he fell and that the defendant Blanc failed to warn the plaintiff of this condition of the stacks. The defendants denied liability and asserted the defenses of contributory negligence and assumption of risk.

For a restatement of the rule by which we are governed in conducting our review in this case we quote from *Crabtree Masonry Co. v. C & R Const., Inc.*, Tenn., 575 S.W.2d 4 (1978), as follows:

> "It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury." (Citations omitted.) 575 S.W.2d at 5.

Although acknowledging the existence of the rule just stated, the majority of the Court of Appeals, nevertheless, proceeded to re-evaluate the evidence and reach a conclusion contrary to that of the jury and the trial judge respecting the issues of assumption of risk and contributory negligence. Judge Franks, however, dissented and filed a dissenting opinion, the greater portion of which we adopt as our own, to-wit:

> "When the evidence is evaluated in the context required of appellate courts, the evidence which the majority considers the basis of its conclusion is neither considered in its strongest legitimate view in favor of the jury verdict nor is the contrary evidence discarded.
>
> *       *       *       *       *       *

"The plaintiff was also asked on cross-examination:

"Q. Was there any hidden danger in that pile of lumber that caused you to fall that day?

"A. Well, I didn't recognize the fact, the hidden danger would be the fact the bands were broken on both of those top piles of lumber, on the left and right. Had they not been broken where I put the right hand I would probably have been able to secure myself. Both piles of lumber slipped with me.

"Q. Did you see the stack of lumber on your right?

"A. I saw the stack of lumber but I did not realize that the bands were broken at that time.

"Q. When did you realize that?

"A. When I got up there and ... when I got up as I said, stated before, I could not get my body any higher than maybe my shoulders and when I turned around and took these three off and turned back around and laid my hand on this one I realized it was broken and I started slipping, I guess.

\* \* \* \* \* \*

"Significantly, the jury returned a verdict against both the individual Blanc and the corporation. Blanc testified the defendants discouraged customers from obtaining their own materials and that he observed the bands on both stacks of lumber were loose prior to plaintiff's climbing the stacks but he gave plaintiff no warning. Blanc testified:

"Q. After you got out there you saw that they were? [Bands broken.]

"A. That they were.

"Q. Because you pointed out to Mr. Haga he was going to have to get them off that stack?

"A. Right.

. . . . .

"Q. But you pointed out to him where the boards were?

"A. Yes, sir.

"Q. ... that he was going to get and when you looked you saw that the bands were off?

"A. Yes, sir.

"He further testified:

"Q. But you will admit it is unsafe to have people climbing upon, on loose lumber?

"A. Normally people ... we are the ones that do the climbing, normally.

"Q. But you know that sometimes you have lumber stacked up there that has the bands off?

"A. Right.

"Q. And you know that people go out there on their own sometimes and load up their own lumber?

"A. Yes.

"A business proprietor has the duty to exercise reasonable care and to maintain his premises in a reasonably safe condition for invitees. *Keller v. East Tennessee Production Credit Ass'n.*, 501 S.W.2d 810 (Tenn.App.1973). Assumption of the risk is recognized as a defense to the owner's duty, *Gargaro v. Kroger Grocery & Baking Co.*, 22 Tenn.App. 70, 118 S.W.2d 561 (1938), but, as the Supreme Court observed in *McCormick v. Waters*, 594 S.W.2d 385 (Tenn.1980):

"Where either party comes forward with material evidence that the other has acted with the lack of care necessary under the circumstances, a jury question is created. It is also for the jury to determine whether a plaintiff has failed to see and avoid a defect and thus has failed to meet the duty to exercise reasonable care. [Citation omitted.] 594 S.W.2d at 387–8.

"It is not the knowledge of danger alone which denies a plaintiff recovery, but the issue is whether in the light of knowledge the plaintiff exercised reasonable care for his own safety, *Mumford v. Thomas*, 603 S.W.2d 154 (Tenn.App.1980), *i.e.*, he must not only know the facts which create the danger but he must comprehend and appreciate the danger.

"The Supreme Court, in *Rogers v. Garrett*, 217 Tenn. 282, 397 S.W.2d 372 (1965), states the test for assumption of risk as:

"We understand the rule of assumption of risk, when it rests in tort and not contract, to be composed of three distinct elements: (1) knowledge of the danger, (2) an appreciation of that danger, and (3) voluntary exposure to that danger. 217 Tenn. at 287, 397 S.W.2d 372.

"Under this test there are factual issues in the instant case for the jury's resolution. As to knowledge of the danger, while plaintiff possessed general knowledge of the danger involved in climbing stacks of lumber due to his prior lumber yard experience, that knowledge, however, related to general as opposed to knowledge of a specific dangerous condition, *i.e.*, both stacks of lumber were unbanded. The second element depends on the first: his general appreciation of danger did not necessarily relate to the specific condition of the stack of lumber under the evidence before us.

"Voluntariness is also an issue upon which reasonable minds could differ as to whether plaintiff consented to relieve the defendants of their duties to him.

"Professor Prosser, in *Torts*, Hornbook, (4th ed., 1971), discusses the duty of the owners or occupiers of land to invitees:

"In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.... It is true also where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.

"The jury could reasonably conclude that Blanc expressly invited plaintiff to encounter the dangerous condition without giving any warning or attempting to prevent it and plaintiff was unaware that the lumber on the top of both stacks was unbanded. Whether plaintiff assumed the risk is a question for the jury on this record."

Applicable here is the following statement from our opinion in *Brookins v. The Round Table, Inc.*, Tenn., 624 S.W.2d 547 (1981):

"In negligence cases, issues of proximate cause, intervening cause and contributory negligence are peculiarly issues for the trier of fact, not the court to determine. Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon them." 624 S.W.2d at 550.

Viewing the evidence in the manner required by the rules stated in *Crabtree Masonry Co., supra*, and *Brookins, supra*, we conclude that the evidence presented jury issues in this case respecting the negligence of the defendants and the defenses of contributory negligence and assumption of risk. The jury having resolved those issues in favor of the plaintiff and against the defendants and their verdict having been approved by the trial judge, the majority of the Court of Appeals erred in granting judgment to defendants notwithstanding the verdict. Accordingly, the judgment of the Court of Appeals is reversed and that of the trial court affirmed and reinstated. Costs incurred upon appeal are taxed against the appellees.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.