Wendell E. LOSEY and Betty J. Losey, Plaintiffs-Appellees,

v.

NORTH AMERICAN PHILIPS CONSUMER ELECTRONICS CORPORATION, Defendant-Appellant.

No. 85–5328.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 28, 1986.

Decided June 3, 1986.

N.R. Coleman, Jr., argued, Greeneville, Tenn., for defendant-appellant.

Eric D. Christiansen, argued, Greeneville, Tenn., for plaintiffs-appellees.

Before JONES and WELLFORD, Circuit Judges; and GILMORE, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The North American Philips Corporation appeals from a judgment on a jury verdict for Wendell Losey and his wife in this personal injury action brought under Tennessee law, pursuant to diversity jurisdiction. We have considered the issues raised and hereby affirm the district court's judgment.

North American Philips (Philips) uses in its production and overhead rail conveyor system to transport parts through its Greenville, Tennessee, plant. The parts are suspended from the rail, approximately 17 feet above the floor, and could conceivably fall off, dropping to the work areas below. Consequently, Philips built a screen guard of steel mesh underneath and partway up the sides of the conveyor to catch any parts that might drop.

It is the usual practice in industry to install such a screen guard; in fact the conveyor manufacturer urges it. The screen is held up by steel supports which extend across the bottom and up the sides of the screen. The screening material stops halfway up the sides, where there is a metal railing. Occasionally, workers at Philips have needed to get inside the screen to reach the conveyor, and therefore some of the bottom panels of steel mesh were simply affixed to the supports with stripped electrical wire.

Wendell Losey, a sales engineer for a company that manufactures conveyor systems, visited Philips' Greenville plant on January 15, 1983, to analyze a conveyor problem. Losey, 56 years old, had more than thirty years experience on such overhead systems. He was escorted to the problem area by Larry Foraker, the plant engineer. Losey and Foraker were lifted up to the side of the screen guard in a hi-lift bucket. Foraker led the way to the conveyor. He climbed over the rails of the hi-lift, stepped onto the side rail of the screen guard, and hopped carefully onto the screen's floor below. Foraker walked across the screen along an angle iron (one of the bottom rails supporting the screen), until he reached the conveyor.

Losey then climbed over the rail of the hi-lift cage, stepped onto the side rail of the screen, and hopped to the screen floor. This piece of screen floor was held up only by wires, which gave way. The screen fell, and Losey hit the ground 17 feet below. He suffered several injuries, including a head injury.

Losey and his wife brought suit in federal court under diversity jurisdiction on the grounds that Philips failed in its duty to warn him of a latent danger of which it had knowledge. The jury returned a general verdict for Mr. Losey of $340,000 and $50,000 for Mrs. Losey for loss of consortium.

On appeal, Philips argues that the district court committed four errors in instructing the jury. Philips contends that the judgment must be reversed because the district court erred in its instructions on duty to warn, proximate cause, computation of damages, and nontaxability of compensatory damage awards.

Jury instructions must adequately inform the jury of the applicable principles of law and fairly present the relevant consid-

* Honorable Horace W. Gilmore, United States District Court for the Eastern District of Michigan, sitting by designation.

**60**

erations. *See Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983). This court will reverse a judgment on a jury verdict when the jury instructions, viewed as a whole, tended to confuse, mislead or prejudice the jury with respect to the applicable law. *See DSG Corp. v. Anderson*, 754 F.2d 678, 679 (6th Cir.1985). When a party's request for an instruction has been denied, that party must show on appeal that there was sufficient evidence to support that finding by the jury. *Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413, 420 (6th Cir.1981).

Many of Philips' arguments on appeal more properly concern the weight of the evidence. In reviewing a judgment based on a jury verdict in a trial under Tennessee law, we may not weigh the evidence or decide whether there was a preponderance of the evidence in favor of the plaintiff; we determine only whether there is material evidence in the record to support the jury's verdict, taking the strongest legitimate view of all the evidence in favor of the verdict. *See Haga v. Blanc & West Lumber Co.*, 666 S.W.2d 61, 63 (Tenn.1984).

### I. Duty to Warn

The first issue is whether the court erred in instructing the jury on the duty of a company to warn its business visitors, "invitees," of dangerous conditions. Losey's theory was that Philips had knowledge of the danger of walking on the unsupported part of the screen and that, because the danger was not apparent to Losey, Philips had a duty to warn. *See Haga*, 666 S.W.2d at 65 (stating a duty to warn an experienced person with general knowledge of dangers but no awareness of the facts creating that particular danger). Losey presented evidence that such screens in other plants can be walked on and that the particular steel mesh at the Philips plant was thick enough to support a man if the mesh were properly affixed to the supports. He presented testimony that the wire ties were not readily visible in the dimly lit area.

In contrast, Philips presented evidence that the screen guard was not intended to support human beings and that Losey, who was knowledgeable about overhead conveyors and screen guards, knew or should have known of the danger. In addition, Philips asserted that no industry standard of care was violated in the way the screen was constructed and maintained. Philips contended that Losey could have seen, on simple observation, that the screen would not hold him. Philips further argued that Losey failed to follow Foraker carefully, and that Losey's own negligence was therefore the cause of his injury.

The court charged the jury thoroughly about the defense's theories of contributory negligence and assumption of risk. The jury was told about the duty that is owed by a business to its invitees. The court clearly instructed that the business need not warn about things that an invitee can see for himself and explained that there is no duty to warn about a danger that would be apparent to a reasonably prudent person exercising ordinary care.

In exhorting us to consider all the evidence that was presented to prove that there was no duty and no negligence, Philips misunderstands the difference between a court's finding and a jury's finding. When each party presents evidence that the other has acted without due care, a jury question is created. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980); *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1980). Losey presented sufficient evidence to create a jury question as to whether the danger was hidden and whether Losey could have and should have discovered the danger himself. Under Tennessee law, it is for the jury to decide whether a plaintiff has failed to observe and avoid a danger and thus has failed to exercise due care for his own safety. *Id.* at 388; *see also Haga*, 666 S.W.2d at 64. Therefore the instructions on duty were warranted, and the jury simply found against Philips. Philips does not demonstrate that, as a matter of law, this issue should not have gone to the jury, nor does it demonstrate that the instructions did not accurately represent Tennessee law. Consequently, we find no error in

the instructions on duty and failure to warn.

## II. Proximate Clause and Contributory Negligence

■ In Tennessee, a plaintiff whose negligence was a proximate cause of his injury is barred from a verdict in his favor, even when the defendant was also negligent. *See Elliott v. Dollar General Corp.*, 225 Tenn. 658, 475 S.W.2d 651, 653 (Tenn.1971); *see also Flinchum v. Clinchfield Railroad Co.*, 460 F.2d 252, 253–54 (6th Cir.), *cert. denied*, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). In other words, Tennessee does not recognize comparative negligence principles when the plaintiff's and defendant's conduct were both proximate causes of the injury.

Tennessee law does allow a jury to consider "remote" contributory negligence in calculating the plaintiff's damages. Remote contributory negligence is that which is "too unconnected in causative force" to be a proximate cause of the injury, and the jury can mitigate damages on a showing of remote contributory negligence. *Gross v. Nashville Gas Co.*, 608 S.W.2d 860, 871 (Tenn.App.), *cert. denied*, 608 S.W.2d 860 (Tenn.1980). In contrast, a proximate cause is one which "in a natural and continuous sequence unbroken by any new cause produces the injury either by itself or together with other negligence," or which may be described as "negligence that is a substantial factor" in causing the injury. *Id.*

For the most part, Philips attempts to convince this court that the evidence was extremely strong that Losey's conduct proximately caused his injury. That argument is more properly made to a jury than to an appellate court. There was abundant evidence presented by both parties, and the court could not withhold the instruction and find contributory negligence as a matter of law.

Philips also argues that the trial court misstated the law on contributory negligence. It contends the court's reference to mitigation of damages constituted an instruction on comparative negligence, which is not the law in Tennessee. Our reading of the record, however, indicates that mitigation was mentioned only in connection with remote negligence, which was appropriate.

## III. Damages

■ Philips' next contention is that Losey's loss of capacity to earn money could not be computed reasonably and that the award of damages was based on pure speculation. Philips, in essence, argues that the evidence was insufficient to submit to the jury the question of damages for diminished earning capacity. The record shows, however, that there was evidence of Losey's age, life expectancy of 16.7 years, and his salary and commission earnings for the years 1980 through 1984. Although Losey was eventually able to resume some sales duties, Losey and others testified to his lapses of memory, change in personality, and inability to perform certain job-related tasks, which would affect his ability to earn commissions. We find no error in the district court's submitting the issue of earning capacity to the jury. Finally, although we might have valuated Losey's loss differently, we cannot say that the award of $340,000 was excessive as a matter of law to compensate Losey for his medical expenses, diminished earning capacity, and pain and mental anguish.

## IV. Tax Consequences

■ The district court refused Philips' request to instruct the jury that compensatory awards are not taxable income under the Internal Revenue Code. The court was correct in stating that there is nothing in Tennessee law to require such an instruction. *See Bass v. Barksdale*, 671 S.W.2d 476, 489 (Tenn.App.1984); *Dixie Feed & Seed Co. v. Byrd*, 376 S.W.2d 745, 749 (Tenn.App.1963), *cert. denied*, 376 S.W.2d 745 (Tenn.1964). The question is whether federal law should apply. Under the *Erie* doctrine, state law must provide the substantive legal principles in a diversity case, while federal law governs procedure. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie Rail-*

road Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Philips argues that the district court should have applied the rule announced in *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 496–98, 100 S.Ct. 755, 758–59, 62 L.Ed.2d 689 (1980), in which the Supreme Court held that an instruction on taxability of compensatory damages should be made in cases brought under the Federal Employers Liability Act.

We cannot, however, mandate the application of *Leipelt* in this case. The law of tort liability and damages is substantive law, not procedural. *Cf., e.g., Erie,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (whether plaintiff was licensee or trespasser and what duty was owed by defendant railroad are questions of substantive law); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (statute of limitations is substantive); *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 535, 78 S.Ct. 893, 899, 2 L.Ed.2d 953 (1958) (federal law requiring jury trial applies because state's rule providing for bench trial not bound up with the definition of state-created rights and obligations); *Hanna,* 380 U.S. 460, 85 S.Ct. 1136 (where a Federal Rule of Civil Procedure applies and is a validly adopted rule, it controls; if no federal rule speaks to the issue, the aims of *Erie* must be balanced with state's interests); C. Wright, *The Law of Federal Courts* § 56, p. 359 (1983) (explaining that the Supreme Court opinions all "recognize that rights created by state law should be adjudicated in accordance with state law"). The rights and duties at issue here, regarding the right to recover damages for negligence, are creatures of state law. The proper factors for calculating the amount of damages are an integral part of the rights and obligations of the parties.

In reaching this conclusion, we are guided by the decision in *Hansen v. Johns-Manville Products Corp.,* 734 F.2d 1036 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). In *Hansen,* the Fifth Circuit limited *Liepelt* to its FELA setting and held that Texas law

was correctly used to instruct the jury on the question of damages in the diversity suit. *Id.* at 1045. We agree. In *Liepelt,* which was a wrongful death action brought under the FELA in an Illinois court, the Supreme Court distinguished FELA actions from other damage suits brought in state and federal courts. The Court stated unequivocally that the *Erie* rule did not require the application of state law of damages in FELA cases because "questions concerning the measure of damages in an FELA action are federal in character." 444 U.S. at 493 & n. 5, 100 S.Ct. at 757 & n. 5. The Court relied on the act's legislative history, which revealed that the FELA was intended to provide national uniformity in regard to railroads' liability for employee injuries. *Id.* The Court's holding was founded squarely on the special nature of FELA cases and is therefore limited to cases involving the FELA or similar federal legislation.

We conclude that the district court properly applied Tennessee law. When a tort action is brought in federal court pursuant to diversity jurisdiction, basing liability on state law, the court must apply state law in regard to availability and computation of damages. Accordingly, we find no reversible error in the district court's refusal to instruct the jury on the tax consequences of an award of compensatory damages.

The judgment of the district court is AFFIRMED.

WELLFORD, Circuit Judge, concurring.

This is a close case vigorously tried by the parties' respective counsel and seriously contested. As indicated by Judge Jones, we may have valued plaintiffs' damages differently particularly with regard to the issue of remote contributory negligence on the part of Losey. We cannot say, however, that reasonable jurors must necessarily have found direct contributory negligence or assumption of risk on this record so as to preclude any recovery. While damages may seem high in light of the uncertainty of loss in actual compensation

suffered by Losey at the time of trial, his claim was for diminished earning *capacity,* for medical expenses, for pain and suffering, and for diminished mental and physical capacity not only with respect to his employment but in enjoyment of other aspects of his life for a substantial period of life expectancy. While this Judge may have viewed the evidence in a decidedly different fashion from that of the jury in this case as to assessing fault and/or damages, our role, as set out by Judge Jones, is to determine whether error has been demonstrated requiring that we set aside the jury award.

I concur that such error has not been shown and that we must accordingly AFFIRM.