A94A0703. CSX TRANSPORTATION, INC. v. FRANKLIN INDUSTRIES, INC.
(445 SE2d 861)

SMITH, Judge.

This appeal involves an indemnification claim by CSX Transportation, Inc. (CSX), a common carrier by railroad, against Franklin Industries, Inc., owner and operator of a limestone plant in Anderson, Tennessee. Benny Crownover, a member of a CSX train crew, was injured on Franklin's property. Crownover brought a claim against CSX under the Federal Employers' Liability Act (FELA), 45 USC § 51 et seq., for breach of CSX's non-delegable duty to provide a safe workplace. CSX brought a third-party claim against Franklin for allegedly creating and maintaining a dangerous condition on its land

causing Crownover's injury.[1] At the close of CSX's evidence the trial court granted Franklin's motion for a directed verdict, and CSX appeals.

Because the accident and injury occurred at Franklin's Tennessee plant, we apply the rule of lex loci delicti and consider the substantive elements of this cause of action under Tennessee law. *Maryland Cas. Ins. Co. v. Glomski*, 210 Ga. App. 759, 760 (437 SE2d 616) (1993). "The rule of lex fori controls all matters affecting only the remedy, such as rules of evidence, methods of shifting the burden of proof, and the presumptions arising from given states of fact." (Citations and punctuation omitted.) *Menendez v. Perishable Distrib.*, 254 Ga. 300, 302 (329 SE2d 149) (1985). The standard of review of a directed verdict therefore is governed by Georgia law. See *Abalene Pest Control Svc. v. Orkin Exterminating Co.*, 196 Ga. App. 463 (1) (395 SE2d 867) (1990) (applying standard of review under Georgia law on summary judgment).

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. . . . Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for the jury's resolution." (Citations and punctuation omitted.) *Jones v. Abel*, 209 Ga. App. 889, 890 (2) (434 SE2d 822) (1993).[2] Applying this strict standard to the evidence in this case, we find that under Tennessee law it does not demand a verdict in favor of Franklin, and therefore we must reverse the trial court's grant of a directed verdict.

Construed most strongly against Franklin, the evidence shows that Franklin and its predecessor in title, Cowan Stone Company, owned a rail siding that was served by CSX. Cowan had been inspected repeatedly and cited by the Tennessee Public Service Commission (TPSC) for maintaining dangerous conditions at the Anderson plant siding, and it is undisputed that after Franklin's purchase of the plant in 1988 the inspections and citations continued. The dust created by processing and loading the limestone into railcars settled on and about the siding. Drainage at the site was extremely poor, so that any substantial rainfall caused quantities of water to accumulate at the siding, sometimes of sufficient depth to cover the rails completely. The water mixed with the limestone dust to form a particularly tenacious mud that also at times covered the rails and interfered with the operation of switches. The limestone powder on the surface

[1] Crownover and CSX settled the FELA claim at trial.
[2] The Tennessee standard for review of a directed verdict is quite similar. See *Chambliss v. Shoney's, Inc.*, 742 SW2d 271, 272 (Tenn. App. 1987).

of the water created a "mirror image" reflection so it was impossible to judge the depth of a puddle of water. All witnesses agreed that the siding was very muddy and slippery during and after rain and on the date of Crownover's injury.

Franklin used a front-end loader to move railcars on its siding. The front-end loader had large rubber tires that gouged out holes of varying depth as the loader skidded on the walkways alongside the tracks. When these holes filled with water mixed with lime dust the reflective surface made it impossible to tell how deep they were. The front-end loader bucket also bumped the corners of the railcars, bending and damaging the angle irons and ribs on the cars.

Franklin was outside the direct regulatory scope of the TPSC. However, the TPSC threatened to close the rail line into Franklin's property unless Franklin agreed to improve site conditions. Franklin responded to the TPSC and agreed to improve the site conditions by taking certain listed actions, including correcting the drainage problems and scraping and smoothing the walkways daily. The TPSC also recommended that instead of the front-end loader, Franklin use a trackmobile, a self-propelled device designed for moving railcars, to avoid destroying the walkways and damaging the cars. A trackmobile runs on the rails and thus does not gouge out or damage adjoining walkways. Because it couples to the railcars, it does not make intermittent and damaging contact with other parts of the cars. However, Franklin declined to purchase a trackmobile, stating that in its experience "a track mobile is a very high maintenance item," and it continued to use a front-end loader to move railcars on its siding.

The incident that gave rise to this action occurred on Franklin's siding on the evening of June 19, 1989. A CSX traincrew arrived at the siding to drop off and collect railcars. Franklin had not smoothed the walkways that day, and the limestone mud was deep enough to cover the top of the engineer's six-inch boots. Crownover was preparing to board a train to begin the process of switching the cars out. He was aware of the muddy conditions, which he described as "like wet cement," but saw only "slush, water and mud" on the ground and did not observe any hole. However, as he prepared to board the last railcar in the train Crownover fell into a hole, severely injuring his knee on a hard object. Crownover's crew members came to his assistance and attempted to discover the cause of his fall. Only after "feeling around" in the mud with his bare hands did one of the crew discover a mud-encrusted piece of angle iron in the bottom of a hole. It resembled the angle irons that supported ladders on the ends of the railcars.

Applying Tennessee law to these facts, we find that the Tennessee "active-passive negligence rule" controls CSX's claim for indemnity. This rule provides that a tortfeasor guilty only of passive negli-

gence may seek indemnity from another tortfeasor guilty of affirmative or active negligence for damages the first tortfeasor has been compelled to pay to an injured party. *Continental Ins. Co. v. City of Knoxville*, 488 SW2d 50 (Tenn. 1972); *Velsicol Chem. Corp. v. Rowe*, 543 SW2d 337 (Tenn. 1976).

In this indemnity action, Franklin's liability is governed by Tennessee common law, regardless of the application of FELA to the main action, and CSX is subject to any defenses which could have been asserted by Franklin in a direct common-law action against it by Crownover. *Southern R. Co. v. Foote Mineral Co.*, 384 F2d 224, 228 (6th Cir. 1967). Franklin asserts, and the trial court held, there was no evidence to support a finding of negligence on the part of Franklin, because Crownover had equal knowledge of the hazards on Franklin's property. We therefore look to Tennessee law governing the liability of owners and occupiers of land for conditions existing on their property.

"Before the owner or operator of a premises can be held liable for negligence in allowing a dangerous or defective condition to exist on the premises, such condition must have been created by the owner or operator or his agent, *or*, if created by someone else, there must be actual or constructive notice on the part of the owner or operator prior to the injury that the condition existed. [Cit.] . . . *In cases where the peril is not created by the proprietor or his agents*, he is not liable for injuries from dangers that are obvious, reasonably apparent, or as well known to the injured party as to the proprietor. [Cit.]" (Emphasis supplied.) *Chambliss v. Shoney's, Inc.*, 742 SW2d 271, 273 (Tenn. App. 1987). This case by its language raises the question of whether, under Tennessee law, a defense of equal notice can be raised where the defendant or its agents knowingly created the dangerous condition.

The case before us is not a typical slip and fall case where the landowner's notice or constructive notice of a defect caused by a third or unknown party is in dispute. There was evidence that Franklin itself, by its acts and omissions, created the dangerous condition which caused Crownover's injury. Franklin failed to correct the drainage problems and did not smooth its walkways daily, as it had agreed to do. Moreover, it continued to use a front-end loader despite recommendations against its use, gouging holes in the walkways and, it could be inferred, knocking from a railcar the angle iron that injured Crownover. Under Tennessee law, this may well place Franklin in a position of liability without regard to actual or constructive notice, and in and of itself, it arguably creates a jury question. However, we need not reach this issue, as we find that jury questions remain on issues of contributory negligence and assumption of the risk.

The doctrines of assumption of the risk and contributory negli-

gence, asserted as defenses by Franklin, "are often used interchangeably. . . . "The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues.' [Cit.]" *Dawson v. Sears, Roebuck & Co.*, 394 SW2d 877, 881 (Tenn. 1965).[3]

Under Tennessee law, knowledge of a general danger does not constitute knowledge of a specific dangerous condition, whether in the context of contributory negligence or assumption of the risk. In *Haga v. Blanc & West Lumber Co.*, 666 SW2d 61 (Tenn. 1984), the plaintiff was aware of the general dangers inherent in climbing on piles of lumber, but he was unaware that the particular piles of lumber he was climbing were unbanded and therefore likely to collapse. The Tennessee Supreme Court held these facts presented jury issues with respect to both contributory negligence and assumption of the risk. Id. at 65. The test of reasonable care for a plaintiff's own safety requires that "he must not only know the facts which create the danger but he must comprehend and appreciate the danger." Id. at 64. Similarly, the test for assumption of the risk requires that the plaintiff have knowledge and appreciation of the specific dangerous condition, and voluntarily expose himself to that danger. Id. at 65. See also *Mullins v. Precision Rubber Prod. Corp.*, 671 SW2d 496, 498-500 (Tenn. App. 1984).

Another decision of the Tennessee Supreme Court contrasts knowledge of a general condition with knowledge of a specific hazard concealed by that condition. In *Dawson v. Sears, Roebuck & Co.*, supra, a parking lot was covered by a heavy fall of snow, concealing the concrete barrier curbs and islands within the lot. The plaintiff entered the parking lot and struck a concealed curb. The Tennessee Supreme Court found jury issues as to whether the defendant had time or a duty to clear the parking lot, close it, or warn the plaintiff, and "whether the plaintiff knew of the concealed dangers, or even whether they were dangers." 394 SW2d at 881. In considering issues of both contributory negligence and assumption of the risk, the court held that whether a danger was open and obvious was a fact question for determination by a jury. Id. at 882.

---

[3] The Tennessee Supreme Court recently abandoned the doctrine of contributory negligence and adopted a modified comparative negligence rule. *McIntyre v. Balentine*, 833 SW2d 52, 56-57 (Tenn. 1992). Thus negligence on the part of Crownover no longer acts as a complete bar to recovery in all circumstances. Id. at 54. This change, however, has no direct effect on our analysis here.

Like lumber without bands and concrete curbs concealed by snow, the state of Franklin's siding involves both an obvious and a concealed danger created by Franklin. It is apparent from the uncontradicted evidence that Crownover assumed the risk or knowingly accepted the obvious danger of slipping and falling in the mud. However, the evidence does not demand a finding that Crownover knew or should have known the danger, or knowingly accepted the risk, of stepping into a concealed hole that Franklin failed to fill as agreed, or onto a concealed piece of angle iron knocked from a railcar by Franklin.

Under these circumstances, there is evidence in the record from which a jury could find that Crownover exercised reasonable care, that his negligence was less than that of Franklin, or that he did not knowingly assume the risk of injury.[4] Therefore, the directed verdict in favor of Franklin was erroneous, and must be reversed.

*Judgment reversed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED JULY 8, 1994.

*Casey, Gilson & Williams, Matthew D. Williams, Sandra Gray,* for appellant.

*Hicks, Casey & Young, William T. Casey, Jr.,* for appellee.

---

[4] This distinction is consistent with Georgia law. See *Atkinson v. Kirchoff Enterprises,* 181 Ga. App. 139 (351 SE2d 477) (1986) (plaintiff's knowledge of existence of pile of construction debris was not knowledge of specific hazard created by a sharp object hidden in the debris).