IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2002

## DAVID CHILTON v. JAMES AUSTIN

**Appeal from the Chancery Court for Davidson County**
**Nos. 97-2370-I and 97-2197-I     Irvin H. Kilcrease, Chancellor**

_____

**No. M2001-02891-COA-R3-CV - Filed February 4, 2003**

_____

In an action between former partners, their various claims against each other were submitted to the jury. The jury returned a verdict that did not award damages to either side. One of the partners appeals, asserting that issues were submitted to the jury that should not have been submitted, that there is no evidence to support the verdict, and that the verdict was a result of passion and prejudice because it was returned the day after the tragedy in New York and Washington on September 11, 2001. We hold that the appellant waived any objection to the issues submitted to the jury, and that the objection to the verdict based on the lack of evidence cannot be sustained. We also fail to find any evidence that the events of September 11, 2001 had any effect on the jury. Therefore we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

David B. Lyons, Nashville, Tennessee, for the appellant James Austin.

**OPINION**

**I.**

James Austin and David Chilton formed a partnership in 1992 to distribute foreign and out-of-state newspapers and periodicals. Mr. Austin obtained a fifty-five percent share of the business and Mr. Chilton owned the remaining forty-five percent share. Their agreement provided that they would share the profits and losses, and make capital contributions on the same basis. Mr. Chilton ran the day-to-day operations, although Mr. Austin was named the supervising venturer and owner.

By the end of 1996, the business was seriously in debt. Mr. Austin terminated Mr. Chilton on January 28, 1997, but he continued the business for another year until it was sold on January 1, 1998 for $2,250,000.

On June 27, 1997, Mr. Austin, d/b/a Austin News was sued by Newsround International Air Freight, Ltd. on a $64,708.30 account for goods and services. Mr. Austin filed an answer and a counter-complaint against Newsround for services provided by Austin News. He also filed a third-party complaint against Mr. Chilton for fraud and contribution. The chancellor ordered a reference to the Clerk and Master to find the amount owed on the various claims. The Clerk and Master found, after giving Austin News credit for its services to Newsround, that Austin News owed Newsround $63,639.23 for products, services, and prejudgment interest. As between Mr. Austin and Mr. Chilton, Mr. Austin was found to be responsible for fifty-five percent of the debt, and Mr. Chilton for forty-five percent. The report provided that neither Mr. Austin nor Mr. Chilton could collect anything from the other until he had paid more than his share of the debt.

In the meantime, Mr. Chilton had sued Mr. Austin in a separate action for $5,000,000. He alleged that he was wrongfully terminated from Austin News, and that Mr. Austin was guilty of fraud, negligent misrepresentation, defamation, oppression of a minority partner, and a breach of a fiduciary duty. He asked for an accounting of the partnership's assets and liabilities, and a finding that Mr. Austin had been unjustly enriched by obtaining Mr. Chilton's prior business, which had been folded into Austin News at its inception in 1992.

Mr. Austin filed an answer and a counter-complaint for fraud, breach of contract, breach of a fiduciary duty, and for contribution and indemnity for the sums he had paid on behalf of the partnership.

On February 18, 1999, the parties filed an agreed order of reference to resolve the accounting issues and to determine the value of the company at the time of Mr. Chilton's termination. The order also set the case for a full trial on September 8, 1999 following the report of the Clerk and Master. The report, filed on September 1, 1999, showed that the business did not have any value in January of 1997 because it was insolvent. Mr. Austin loaned the company $2,329,777.00 in 1997, and by July of that year the company was making a profit. The report further found that Mr. Austin sold the company less its accounts receivable in January of 1998 for $2,250,000. Finally, the Clerk and Master found that the value of the business as of January 28, 1998 was $3,000,000.

The parties struggled through some discovery issues and agreed to continue the trial. At one point, the court set a bench trial to determine the accounting issues and to determine what amount, if any, one of the parties owed to the other. The court confirmed the report of the Clerk and Master, but after a pre-trial conference on September 4, 2001, the court entered a pre-trial order, drafted by Mr. Austin's attorney, that contained the following stipulations:

> 5. STIPULATIONS: The parties stipulate herein and by separate Stipulation, as follows:
> a. All documents submitted in discovery are authentic and can be admitted through any witness.

b. The Clerk and Master's Findings and Report shall be admitted as an exhibit. Both parties are allowed to read the report to the jury and the jury may retire with the Clerk and Master's Report.

c. The parties stipulate that as of January 27, 1997, the parties were partners in a joint venture agreement, the terms of which were committed to writing. The parties do not agree whether the obligations under that joint venture agreement continued beyond January 27, 1997.

\* \* \*

8. FACTUAL ISSUES FOR THE JURY: The factual issues for the jury from the plaintiff [Mr. Chilton] are:

- Did the defendant [Mr. Austin] breach the joint venture agreement, and if so, what are the plaintiffs' damages.

- Did the defendant fraudulently induce the plaintiff to enter into a joint venture agreement, and if so, what are the damages.

- Did the defendant breach his fiduciary duty to the plaintiff and if so, what are the damages.

The factual issues for the jury from the defendant and counter-plaintiff are:

- Was the counter-defendant [Mr. Austin] obligated under the joint venture agreement to pay 45 percent of the losses or required capital contributions, and what is the amount of damages the counter-defendant owes under the joint venture agreement.

The jury returned a verdict finding that neither party breached the joint venture agreement and that Mr. Austin did not fraudulently induce Mr. Chilton to enter into the agreement. The jury did not find any damages due from either party.

Mr. Austin moved for a judgment notwithstanding the verdict and for the court to find the facts and set damages. The court overruled the motion. Mr. Austin filed his notice of appeal on November 26, 2001 and a statement of the evidence on March 14, 2002, within the time allowed by an order of this court. Mr. Chilton did not object to the statement of the evidence nor did the chancellor approve it. But Tenn. R. App. P. 24(f) provides for automatic authentication thirty days after the expiration of the time provided for objections.

## II.
### THE WEIGHT OF THE EVIDENCE

Mr. Austin asserts that there is no evidence to support the jury verdict. This ground requires a motion for a new trial in the trial court in order to raise it on appeal, *see* Tenn. R. App. P. 3(e), and Mr. Austin did not make a motion for a new trial. He did, however, include in his post-trial motion a request that the court alter or amend the verdict and the substance of the motion is an attack on the verdict because it was not supported by the evidence. We will treat the motion as a motion for a new

trial and address the issue of the weight of the evidence. *See Fahey v. Eldridge*, 46 S.W.3d 138 (Tenn. 2001).

We are hampered in this endeavor by the fact that there is no transcript of the evidence. There is, however, a statement of the evidence filed under Tenn. R. App. P. 24(c). From the statement of the evidence we conclude that the two reports of the Clerk and Master were submitted to the jury and the jury was asked to decide if Mr. Austin had defrauded Mr. Chilton. The jury decided that issue in Mr. Austin's favor. Therefore, the only question left to be decided was who owed whom in the final liquidation of the business. As we have noted, the jury found that neither party owed the other anything.

The statement of the evidence recites many figures showing the company's losses and Mr. Austin's efforts to keep the business afloat after Mr. Chilton's departure in 1997. The reports of the Clerk and Master also reflect some of the same evidence. Mr. Austin apparently paid one judgment of $63,639.23 for which he would be entitled to a forty-five percent contribution from Mr. Chilton. But the Clerk and Master's reports also reflect that the company had made a profit for some period before it was sold and that Mr. Austin sold the company without the accounts receivable for $2,250,000. At the time of the sale the company had a value of $3,000,000. The jury must have found that Mr. Austin got his money back but that there was nothing left over to share with Mr. Chilton.

Findings of fact by the jury may be set aside only if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). In making that determination, we are required to take the strongest legitimate view of all the evidence in favor of the verdict and to discard all to the contrary. *Haga v. Blanc & West Lumber Co., Inc.*, 666 S.W.2d 61 (Tenn. 1984). Based on the record before us we cannot conclude that the verdict, concurred in by the chancellor, was erroneous.

## III.
### DID THE COURT ERR IN SUBMITTING ALL THE CLAIMS TO THE JURY?

Mr. Austin contends that the chancellor erred in submitting the damages claims to the jury, having previously ordered a bench trial to determine the claims of the parties relative to the business. But the pre-trial order prepared by Mr. Austin's attorney included the following issue for the jury's consideration: "Was the counter-defendant obligated under the joint venture agreement to pay 45 percent of the losses or required capital contributions, and what is the amount of damages the counter-defendant owes under the joint venture agreement." There is no indication in the record that this provision was included in the pre-trial order over Mr. Austin's objection.

A party cannot complain of an error when the party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of" the error. Tenn. R. App. P. 36(a). The failure to act will amount to a waiver of any objection to the proceedings in the trial court where the faulty procedure could have been prevented by a timely objection. *Grandstaff v. Hawks*, 36

S.W.3d 482 (Tenn. Ct. App. 2000); *State v. Thompson*, 36 S.W.3d 102 (Tenn. Crim. App. 2000). We think Mr. Austin waived any objection to the issues submitted to the jury.


## IV.
### WAS THE VERDICT A RESULT OF PASSION AND PREJUDICE

Mr. Austin asserts that the verdict returned on September 12, 2001 was obviously affected by the events in New York and Washington the day before. We fail to find any evidence in the record that the jury abandoned its sworn duty in a reaction to the devastation caused by the September 11 attacks.

The judgment of the court below if affirmed and the cause is remanded to the Chancery Court for Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, James Austin.


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.