IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2006 Session

## BETTY G. BROWN v. GARY A. HUGO

Direct Appeal from the Circuit Court for Shelby County
No. CT-000405-02     James F. Russell, Judge

No. W2005-01356-COA-R3-CV - June 27, 2006

Betty Brown ("Plaintiff") was involved in an automobile accident where her car was struck in the rear by the vehicle driven by Gary Hugo ("Defendant"). Plaintiff subsequently filed suit against Defendant in order to recover medical expenses for injuries Plaintiff claims to have incurred as a result of the accident along with other damages. At trial, the jury found that Plaintiff was not entitled to recover from Defendant. Plaintiff appeals arguing that the jury's verdict was unsupported by competent and credible material evidence. For the reasons set forth below, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Michael C. Skouteris, Memphis, Tennessee, for the appellant, Betty Brown

Douglas A. McTyier, Germantown, Tennessee, for the appellee, Gary A. Hugo.

### OPINION

*Factual Background and Procedural History*

On January 26, 2001, Betty Brown ("Plaintiff") was driving south on Coughlin Street in Memphis when her vehicle was struck in the rear by a 1996 Honda Accord driven by Gary Hugo ("Defendant"). As a result of the accident, Plaintiff filed suit against Defendant asserting that, due to Defendant's negligence, she sustained a full thickness tear of the right supraspinatus tendon, a partial tear of the infraspinatus tendon, a tear of the bursa, and other injuries as a result of the accident. Defendant answered Plaintiff's complaint and denied that Plaintiff sustained her alleged injuries as a result of the accident on January 26, 2001.

This case went to trial on November 18, 2004. At trial, Defendant did not contest that he was at fault for causing the accident in question. Thus, as a result, the trial proceeded on the sole issue of damages. Testifying on his own behalf, Defendant stated that he was traveling less than one mile per hour when he hit the rear of Plaintiff's vehicle and that the only damage to Plaintiff's rear bumper consisted of four small marks caused by the license plate bolts on the front of Defendant's vehicle. Defendant stated that no damages occurred to his vehicle. Defendant further testified that after the accident, Plaintiff stated that she was not injured and did not have any visible signs of injury.

Testifying on her own behalf, Plaintiff asserted that the impact of Defendant's car placed marks on her bumper and also caused paint to come off the left side of the bumper. Plaintiff also stated that the impact caused her hand to strike the dash of her vehicle. In testifying about her injuries, Plaintiff stated that she was in pain after the accident and, after three days of self treatment, sought care from her primary care physician, Dr. Phillip Mintz. Dr. Mintz subsequently referred Plaintiff to Dr. Robert Bourland, an orthopedic surgeon. Dr. Bourland subsequently referred Plaintiff to Dr. James Calandruccio.

Plaintiff presented Dr. Calandruccio's deposition testimony at trial. Plaintiff first visited Dr. Calandruccio on February 20, 2001, at which time she did not give him a history of any symptoms or treatment with respect to her right shoulder, arm, or hand prior to the accident on January 26, 2001. However, Plaintiff did inform Dr. Calandruccio that she had been in a car accident on January 26, 2001, and had sustained an injury to her right hand and elbow. Upon examining Plaintiff during her first visit, Dr. Calandruccio testified that she had a normal gait, full range of motion of the cervical spine, and full range of motion of her shoulders. Dr. Calandruccio also stated that Plaintiff had no tenderness about her arm, but did have some tenderness over the outside of her elbow, around her forearm, and also had some noise with the motion of her wrist. Dr. Calandruccio testified that he saw Plaintiff again on March 28, 2001, at which time she was having problems with her entire right arm, including her right shoulder. Dr. Calandruccio stated that on August 29, 2001, he ordered an MRI and subsequently determined that Plaintiff had a full thickness rotator cuff tear. On September 20, 2001, Plaintiff underwent surgery which revealed a torn rotator cuff tendon.

When questioned as to the cause of Plaintiff's shoulder injury, Dr. Calandruccio testified that he believed it resulted from trauma Plaintiff experienced in the auto accident on January 26, 2001. However, Dr. Calandruccio stated that his opinion regarding a causal relationship between Plaintiff's January 26, 2001, accident and the alleged shoulder injury was based upon Plaintiff's statement that she was involved in a car accident and jammed her hand into the steering wheel. Dr. Calandruccio further admitted that Plaintiff did not indicate the severity of the accident and acknowledged that the severity of the impact was an important factor in determining causation of such an injury. Dr. Calandruccio also stated that his opinion as to causation with respect to Plaintiff's shoulder injury was only as good as the history provided by the Plaintiff regarding trauma to her shoulder. When cross examined concerning causation of Plaintiff's rotator cuff injury, Dr. Calandruccio indicated that any force delivered through the arm

to the shoulder could cause a rotator cuff tear and that such injuries can be caused from things as trivial as trying to start a lawnmower or outboard motor. Dr. Calandruccio further acknowledged Plaintiff's injury could have been caused by overhead lifting required at Plaintiff's job and also noted that it was possible that the rotator cuff could have been injured before or after the January 26, 2001, accident.

Plaintiff testified that she was involved in a vehicular accident in 1997 and filed suit seeking damages for whiplash, bilateral shoulder tendinitis, thoracic strain, lumbar pain, pain and inflammation, muscle spasms, and mental anguish.[1] Plaintiff also admitted that in February 2002, she was involved in another vehicular accident, and a complaint was filed on her behalf alleging that as a result of that accident, she sustained injures causing back, neck, and shoulder pain. Plaintiff further testified that she received a lower back injury after falling at her sister's house on June 28, 2002. Additionally, Plaintiff testified that she filed a worker's compensation claim resulting from an on-the-job injury that occurred on March 6, 2003, in which she injured her neck.[2] Despite these other incidents, Plaintiff stated that from 1997 until January 26, 2001, she had not been involved in any type of accident, work-related or otherwise, involving her right shoulder, right arm, or right hand, and did not suffer from pain or any other symptoms in her right shoulder. However, Plaintiff did testify that during this time she was employed as a nurse and, as part of her duties, she was required to perform overhead reaching and lifting using her right shoulder.

In presenting evidence on damages, Plaintiff testified that she had incurred over $20,000 in medical expenses due to her accident with Defendant. However, on December 2, 2004, the jury returned a verdict in favor of Defendant, finding that Plaintiff was not entitled to recover

---

[1]At trial, Plaintiff admitted that she failed to include the 1997 accident and resulting lawsuit in her response to Defendant's interrogatories asking whether she had been involved in any prior accidents, sustained any previous personal injuries, or had been involved in any previous legal actions. Plaintiff also failed to disclose the 1997 accident in response to questioning by Defendant's counsel at her deposition. In the 1997 lawsuit, Plaintiff sought damages for "[w]hiplash injury, bilateral shoulder tendonitis, thoracic strain, lumbar strain, pain and inflammation, muscle spasms, and mental anguish." In explaining her failure to report the 1997 incident, Plaintiff repeatedly stated that "I did not remember that incident." However, the record shows that Plaintiff did disclose a previous accident, where she hurt her ankle, occurring several years before her 1997 accident.

[2]At trial, Plaintiff denied filing any lawsuit in relation to her March 6, 2003, injury. However, counsel for Defendant produced a complaint filed on behalf of Plaintiff against her employer relating to the 2003 injury. In explaining this apparent contradiction, Plaintiff stated as follows:

Well, I have not filed a lawsuit so much for benefits. I was having difficulty getting to see a physician. So I could not handle that with the insurance company on my own, and I had no other choice but to seek legal representation in order to take care of that.
So to sue the company that I work for, I'm not–I'm not suing them for that. This is what the attorney is doing. But I need to have some type of communication with the work comp carrier that I was not getting. So in response to that, I had to to [sic] seek legal attention in order to get those things taken care of.

from Defendant. As a result, the trial court entered judgment in favor of Defendant. Plaintiff subsequently filed a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, a New Trial. The trial court denied this motion. Plaintiff appeals.

### Issues Presented

Whether the jury's verdict was supported by competent and credible material evidence.

### Standard of Review

This case was tried before a jury. Findings of fact by a jury shall be set aside only if there is no material evidence to support the verdict. Tenn. R.App. P. 13(d) (2005). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party and discard evidence to the contrary. *Haga v. Blanc & West Lumber Co.,* 666 S.W.2d 61, 63 (Tenn. 1984); *Smith County v. Eatherly,* 820 S.W.2d 366, 369 (Tenn. Ct. App. 1991). We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* This standard of review safeguards the constitutional right to a trial by jury. *Id.*

### Analysis

In this case, Plaintiff argues that the jury verdict was not supported by competent and credible material evidence. We disagree.

In an action for negligence, the plaintiff must prove five elements: (1) a duty of care owed to the plaintiff by the defendant; (2) conduct by the defendant constituting breach of that duty; (3) injury or loss to the plaintiff; (4) that the defendant's conduct was the cause in fact of the plaintiff's injury; and (5) that the defendant's conduct was the proximate or legal cause of the injury. *Waste Mgmt.,Inc. of Tenn. v. S. Cent. Bell Tell. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). In this case, Defendant admitted that he breached his duty of care to Plaintiff, resulting in the accident at issue. However, Defendant denied that his breach caused Plaintiff's injuries. Once a breach of duty is shown, the plaintiff carries the burden of proving that the accident was proximately caused by the defendant's acts. *Kilpatrick v. Bryant,* 868 S.W.2d 594, 599 (Tenn. 1993).

In attempting to establish causation, Plaintiff testified that when Defendant hit her, her hand went through her steering wheel and hit the dashboard. Plaintiff then presented the testimony of Dr. Calandruccio, who testified that he believed that Plaintiff's injuries resulted from her hand hitting the dashboard during her accident with Defendant. However, Dr. Calandruccio also testified that Plaintiff's injuries could have occurred before or after her accident with Defendant and further admitted that such injuries could have been caused from

things as trivial as trying to start a lawnmower[3] or from overhead lifting required as part of Plaintiff's job.[4] When questioned as to why he believed that Plaintiff's injuries resulted from her accident with Defendant rather than some other cause, Dr. Calandruccio stated that his opinion regarding causation of Plaintiff's injury was based upon Plaintiff's representations to him during his medical examination of her. However, we note that the record shows that Plaintiff was impeached on cross examination by Defendant's counsel regarding, among other things, her failure to disclose a 1997 car accident in which she suffered previous shoulder injuries as well as her denial that she had filed a lawsuit against her employer in relation to a 2003 work-related injury. In addition to proof presented by Plaintiff, the jury also heard testimony from Defendant in which he stated that he was traveling at a low rate of speed at the time of the accident, that Plaintiff's vehicle sustained very minor damage, and that Plaintiff stated at the scene that she was not hurt.

After reviewing the record in this case, we find that sufficient material evidence exists to support the verdict of the jury. Specifically, based upon the evidence presented at trial, a jury could reasonably infer that Plaintiff's injuries were not caused from the January 26, 2001, accident involving Defendant, but rather resulted from some other cause either before or after the accident at issue. Accordingly, we affirm the trial court.

### *Conclusion*

Based upon the foregoing, we affirm. Costs of this appeal are assessed against Plaintiff, Betty Brown, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[3]Plaintiff testified at trial that prior to her accident with Defendant, she enjoyed doing yard work.

[4]Plaintiff testified that her job duties included overhead lifting.