# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 7, 2013 Session

## GREG PARKER, ET. AL. V. HOLIDAY HOSPITALITY FRANCHISING, INC., ET. AL.

**Appeal from the Circuit Court for Roane County**
**No. 11CV5    Hon. Russell E. Simmons, Jr., Judge**

---

**No. E2013-00727-COA-R3-CV-FILED-AUGUST 27, 2013**

---

This is a premises liability case in which Plaintiffs alleged that a shower bench in Hotel collapsed, causing Husband to fall and sustain injuries. Plaintiffs filed suit against Defendant, claiming negligence. Defendant filed a motion for summary judgment, asserting that he did not install the bench and did not have actual or constructive notice of the independent contractor's negligent installation of the bench. The trial court granted the motion for summary judgment and dismissed the case. Plaintiffs appeal. We reverse the decision of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ. joined.

William Richard Baker, Jr., Knoxville, Tennessee, for the appellants, Greg Parker and Diane Parker.

Andrew J. Lewis and Brian H. Trammell, Knoxville, Tennessee, for the appellee, Shashi Patel, individually and d/b/a S.P. Partnership d/b/a Holiday Inn Express.

## OPINION

## I. BACKGROUND

The pertinent facts of this case are not in dispute. On May 12, 2010, Gary and Diane Parker (collectively "Plaintiffs") rented a room at Holiday Inn Express ("Hotel") in

Harriman, Tennessee. Hotel was owned and operated by Shashi Patel, who was doing business as S.P. Partnership, which was doing business as Holiday Inn Express (collectively "Defendant"). Gary Parker ("Husband"), a paraplegic, requested a handicapped accessible room. Upon entering the room, Plaintiffs noticed that the shower bench was not secured to the wall. Husband requested a different room but was informed that another room was not available. He submitted a maintenance request with a manager before he and Diane Parker ("Wife") left for dinner. Hotel dispatched a maintenance man, Craig Tyner, who inspected the bench and tightened the bolts. Upon their return, Plaintiffs were advised that the bench had been repaired.

The next morning, Husband transferred himself onto the shower bench and began showering. After approximately ten minutes, the bench collapsed, dropping him to the floor and shattering several tiles in the bathroom. Wife helped Husband out of the bathroom. Husband composed himself, dressed, and informed a manager of the incident. Plaintiffs were transferred to another room without further incident. Days later, Plaintiff discovered that he had sustained several compression fractures as a result of the fall.

Following the accident, the parties learned that the bench collapsed because it had not been properly attached to the inner wall structure. The improper attachment was concealed behind Sheetrock, which was covered by a tile wall. Plaintiffs filed suit against Holiday Hospitality Franchising, Incorporated doing business as Holiday Inn Express ("Holiday Hospitality"); Holiday Inn Express, an unknown entity; and Defendant (collectively "Defendants"). Plaintiffs alleged that Defendants

> were negligent in the construction, maintenance and installation of the [bench] and failed to use reasonable care while performing repairs and warranted that the bench had been repaired, when in fact it had not been repaired for its foreseeable use.

Plaintiffs claimed that Husband sustained injuries as a result of the incident and that they were entitled to compensatory damages for Husband's past and future medical expenses, loss of quality of life, and physical pain and mental suffering and for Wife's "loss of society, services, care and consortium" from Husband. Plaintiffs also requested punitive damages.

Defendants denied liability, asserting that Defendant "acted reasonably and with due diligence" in maintaining the bench. Defendants raised the defense of comparative fault, claiming that Plaintiffs failed to use due care in deciding whether it was safe to use the bench and that D&S Builders, LLC ("Builder") was negligent in either the construction or the installation of the bench. With permission from the court, Plaintiffs added Builder as a party

in an amended complaint. Builder filed a motion to dismiss, citing the applicable statute of limitations and repose.[1]  The trial court dismissed the complaint against Builder.

Thereafter, Defendants filed a motion for summary judgment.  Defendants claimed that the improper installation of the bench was a latent defect because it was hidden behind Sheetrock and the tile wall.  They believed they were entitled to summary judgment because they had no "notice, constructive or actual, of the lack of proper blocking" that was concealed by Builder, an independent contractor, and because they "did not control the method and manner [Builder] used" in installing the bench.  They likewise asserted that they had no duty to inspect the work completed by Builder or to monitor the structural integrity of the hotel.  Holiday Hospitality additionally asserted that it was entitled to summary judgment because it owed Plaintiffs no duty of care when it did not have an ownership interest in the Hotel, control the day-to-day operations, own the property, or build the structure.  The trial court dismissed the complaint as to Holiday Hospitality and Holiday Inn Express, an unknown entity.[2]  However, the case proceeded as to Defendant.

In support of the motion, Defendant attached deposition testimony from several witnesses and a statement of undisputed material facts.  Husband testified in his deposition that he had received disability benefits since 2004, when he injured his spinal cord and became paralyzed from "about the belly button down."  He retained some feeling in his lower extremities but could no longer walk or stand.  Relative to the accident, he viewed a "gap between the bracket of the bench and the wall" and discovered that the bench was loose when he shook it.  After reporting the problem, he and Wife left for dinner.  When they returned, he "[s]aw that [the bench] was bolted up flush to the wall like it should be."  He related that it did not "shake or sound loose" when he "manually pushed" on the bench.  He claimed that on the morning of the accident, he only weighed approximately 200 pounds.

Husband testified that while he did not feel immediate pain at the time of the accident, he began to experience pain "[l]ate that afternoon, early evening."  He later learned that he had sustained several fractures as a result of the accident.  He also experienced pain, pressure sores, and urinary tract infections and was forced to limit his physical activity.

Wife confirmed Husband's account and attested that she was standing near the bathroom door when she heard a "crash" and Husband "yelling."  She then discovered

---

[1]Plaintiffs submitted a second amended complaint, requesting $200,000 in punitive damages.  Defendants objected to the filing of the second amended complaint, and the record does not reflect that the trial court ever accepted the filing of the second amended complaint.

[2]Plaintiffs did not appeal this dismissal.

Husband, who appeared "distressed," on the floor surrounded by tile. She opined that after the accident, Husband was no longer able to help with household chores or engage in as many physical activities and that their relationship was "strained" as a result of his inactivity.

In an attached affidavit, Mr. Tyner attested that he was employed as a maintenance man at Hotel. He stated that Husband's complaint "was the only complaint we ha[d] ever received about a shower bench." His inspection of the bench "did not reveal obviously loose bolts or any other problems." Nevertheless, he "tightened the bolts that fastened the shower bench to the wall" and then "pressed down on the bench" and found that "the bench did not bow or move in any way." When he left the room, "the shower bench appeared secure and there were no obvious or visible problems associated with the bench."

Defendant attested, by affidavit, that other than Husband's complaint, there had been "no prior or subsequent instances of complaints, injuries or accidents at the [H]otel involving a handicap shower bench." He hired Builder but did not furnish any tools, labor, or materials used by Builder and did not control the manner and method used by Builder. He relied upon Builder to "construct the building in a reasonably safe manner, free from defects."

In his deposition, Defendant testified that he owned three hotels. He acquired the land for each of the properties and hired builders to construct the hotels and managers to manage each property. He hired Builder to construct Hotel and several of his other projects. He never experienced problems with the shower benches at Hotel or in his other properties. He personally hired Mr. Tyner, who had worked on a farm and "knew a little bit about maintenance." He sent him to the certification training required by Holiday Inn but never provided additional training.

Defendant testified that during the construction of Hotel, he believed he could have suggested changes if he noticed any issues. He visited the property once or twice a week to document the progress. He claimed that the architect, building inspector, and state fire marshal were responsible for actually inspecting Builder's work. He recalled meeting with representatives from Holiday Inn, who also inspected the building on two occasions. He stated that the representative who inspected the building prior to the opening walked through each room. He insisted that the representative did not check the handicap benches and that he also never personally checked the benches. He did not know whether anyone had used the bench prior to Husband. He related that he was neither a certified builder nor an architect and that his expertise was in managing people. While he did not inspect the bench prior to the fall, he viewed the bathroom after the accident and was "surprised" that the bench was not supported by anything other than molly bolts. He stated, in pertinent part,

-4-

I was surprised that, you know, there was nothing behind there because if there was something behind I'm sure the thing wouldn't have fallen down. It's like a curtain rod. If you just put a curtain rod in [S]heetrock more than likely over time it's going to bend and break.

Plaintiffs responded to the motion for summary judgment with a statement of additional facts and by asserting that genuine issues of material fact precluded summary judgment. Citing the Restatement (Second) of Torts and *McHarge v. M.M. Newcomer & Co.*, 100 S.W. 700 (Tenn. 1907), Plaintiffs argued that Defendant became liable for Builder's negligent installation of the shower bench once he resumed control of the premises. They alternatively asserted that Defendant had a "duty to inspect the premise[s] while under construction [and] after construction" and that genuine issues of material fact remained regarding "whether that duty included the obligation to test the bench with adequate weight" to ensure that it was properly installed and would support a 350-pound individual as designed. They attested that Hal Deatherage, an engineer, would testify that the bench collapsed because of "the failure to install the appropriate blocking . . . prior to the installation of the [Sheetrock]." Mr. Deatherage would also testify that Defendant owed a

duty to insure that the blocking was in place, and on information and belief, the individual(s) who inspected the construction to insure it was correctly blocked prior to the installation of the [Sheetrock] either failed to perform the inspection, or if inspected, the inspection failed to discover the lack of blocking which falls below the standard of reasonable care in the discharge of the inspection duties[.]

Following a hearing, the court dismissed the complaint, holding that Defendant did not have a duty to inspect Builder's construction of Hotel and rejecting Plaintiffs' contention that Defendant was "strictly liable for injury caused by an independent contractor's negligent construction after the work [was] accepted" because Defendant did not have knowledge of the negligent construction. This timely appeal followed.

## II. ISSUE

We consolidate and restate the issues raised on appeal as follows:

Whether the trial court erred in granting the motion for summary judgment in favor of Defendant.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008), *superseded by statute*, 2011 Tenn. Pub. Acts ch. 498 §§ 1, 3 (codified at Tenn. Code Ann. § 20-16-101).[3] When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

---

[3]The Tennessee General Assembly legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. The statute is applicable to cases filed on or after July 1, 2011. Thus, in this appeal, we will continue to apply the summary judgment standard set forth in *Hannan* because the complaint was filed on May 11, 2011.

## IV. DISCUSSION

Plaintiffs assert that the trial court erred in dismissing the complaint because material questions of fact remained regarding whether Defendant should be held strictly liable for independent contractor's negligence, whether Defendant's failure to use reasonable care prevented him from discovering the defective condition, and whether Defendant failed to use ordinary care in maintaining the premises. Defendant responds that the trial court did not err in dismissing the complaint because he was not strictly liable for independent contractor's negligence and because he used reasonable care under the circumstances.

A plaintiff seeking recovery under a premises liability theory must establish the elements of negligence. It is well settled in Tennessee that the elements of a negligence claim include:

> (1) a duty of care owed by the defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). In premises liability cases, liability is imposed upon property owners due to their superior knowledge of the premises. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). However, Tennessee follows the general rule that an "employer is not ordinarily liable for the negligence of an independent contractor." *Carr v. Carr*, 726 S.W.2d 932, 933 (Tenn. Ct. App. 1986) (citing *Potter v. Tucker*, 688 S.W.2d 833, 835-36 (Tenn. Ct. App. 1985)); *see also Pryor v. Southbrook Mall*, No. 02A01-9709-CV-00217, 1998 WL 802005, at *3 (Tenn. Ct. App. Nov. 18, 1998) (recognizing the general rule of an employer's non-liability for negligence committed by an independent contractor).

Plaintiffs argue that an exception to this general rule applies pursuant to the Tennessee Supreme Court's decision in *McHarge*. There, the Court stated,

> While the general rule of law is, as stated, that the proprietor or employer is not liable for the negligence of his contractor and the servants and assistants of the latter, yet there are well-established exceptions and limitations to it. These exceptions in general are: Where the act contracted to be done is wrongful or tortious in itself; where the injury is the direct or necessary consequence of the work to be done; where the thing to be done or the manner of its execution involves a duty to the public incumbent upon the proprietor or employer; when the work contracted for is intrinsically dangerous, and the

performance of the contract will probably result in injury to third persons or the public; and where the proprietor interferes with the contractor in the performance of the work. Nor does it apply when the work has been completed and accepted.

200 S.W.3d at 702 (citing 1 Jaggard on Torts, 231; Commentaries on the Law of Negligence, §§ 645-651).

Plaintiffs' contention focuses upon the last *McHarge* exception, namely "when the work has been completed and accepted." *Id.* They argue that Defendant's acceptance of Builder's work rendered him strictly liable for any injuries relating to the improper construction of the premises. While Plaintiffs cited cases dealing with the other exceptions, the particular exception at issue in this case has not been applied to any case in Tennessee. However, a similar exception to the general rule of non-liability can be found in the Restatement (Second), which provides, in pertinent part,

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion.

Restatement (Second) of Torts: Negligence § 422. Despite similar language in *McHarge*, section 422 of the Restatement (Second) has not been applied to any case in Tennessee.

Whatever authority *McHarge* and the Restatement (Second) had on this issue in Tennessee was removed by the Tennessee Supreme Court's decision in *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). In *Blair*, the Court held that in addition to the elements of negligence, a plaintiff must also establish:

(1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

130 S.W.3d at 764 (citations omitted). Thus, in Tennessee, a premises owner may not be held liable for negligent construction of the premises unless he or she caused the condition or had some notice of the condition prior to the accident.

Plaintiffs contend that the condition was caused or created by Defendant because he hired Builder to construct Hotel. Allowing recovery pursuant to that theory would obliterate this state's recognition of the general rule that employers are ordinarily not liable for the negligence of an independent contractor and would be akin to adopting section 422 of the Restatement (Second). We decline to adopt such a rule. Plaintiffs alternative theory appears more plausible, namely that Defendant had constructive notice of the dangerous condition that existed for approximately four years and that Defendant "could or should have become aware of the [] dangerous condition through the exercise of reasonable care, such as testing to assure that the shower bench would operate as designed and remain mounted to the wall while supporting 350 pounds of weight, as it was designed to do."

"Constructive notice" is defined as '"information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cause upon him the duty of inquiring into it."' *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)). If a third party caused or created the dangerous condition, the plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." *Elkins v. Hawkins Cnty.*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. May 19, 2005) (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). A defendant may be charged with constructive notice "if the fact or information could have been discovered by reasonable diligence and the [defendant] had a duty to exercise reasonable diligence to inquire into the matter." *Hawks*, 960 S.W.2d at 15. By showing actual or constructive notice, a plaintiff demonstrates that the owner had a duty to act reasonably under the circumstances and remedy the condition that caused injury to the plaintiff. *Blair*, 130 S.W.3d at 766.

"In cases such as this where liability is based upon constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). In addition to considering the length of time that the condition existed, one must also consider "the nature of the business, its size, the number of patrons, the nature of the danger, [and] its location along with the foreseeable consequences." *Id.*

-9-

Here, the dangerous condition existed for approximately four years in a room that was advertised to be handicapped accessible. The record reflects that at least some of the handicapped accessible rooms had been rented prior to Husband's stay and that the handicapped accessible rooms were filled to capacity the night before Husband was injured. The nature of the danger here was great given that the bathroom in question was designed for handicapped persons who already suffered from various injuries or ailments that hindered mobility and who would likely be more susceptible to further injury as a result of a fall. Thus, it was reasonably foreseeable to Defendant that handicapped persons would use and had likely used the accessible showers at some point since the opening of Hotel and that injuries as a result of the failure of the requisite shower benches to work as designed were likely. As the owner of the premises, Defendant was in the best position to prevent the foreseeable danger by inspecting the benches to ascertain whether they performed as promised. With these considerations in mind, we conclude that Defendant had a duty to exercise reasonable care and diligence to ensure that the shower benches performed as designed and that there was material evidence from which the trier of fact *could* conclude that the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger. Accordingly, we further conclude that the trial court erred in dismissing the complaint at this point in the proceedings because material questions of fact remained. In so concluding, we express no opinion as to whether Defendant actually had constructive notice of the dangerous condition or breached the applicable duty.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings. Costs of the appeal are taxed to the appellee, Shashi Patel, individually and d/b/a S.P. Partnership d/b/a Holiday Inn Express.

_____
JOHN W. McCLARTY, JUDGE